ALLEN, RESPONDENT, *v.* AJAX MINING COMPANY ET
AL., APPELLANTS.

(No. 2,069.)

(Submitted May 24, 1904.    Decided June 13, 1904.)

*Mining Corporations—Sale of Property—Authority Given by*
*Statute—Impairing Obligation of Contract — Constitution-*
*ality of Statute.*

In a suit by a minority stockholder of a mining corporation to restrain the sale
    of the corporate property, *held,* as to a mining corporation organized be-
    tween 1889 and 1898, the authority conferred on such corporation to sell
    its property by Laws of 1899, page 113 (commonly known as "House Bill
    132") was not violative of the Federal Constitution (Art. I, Section 10)
    and the Constitution of the State of Montana (Art. III, Section 11), as
    impairing the obligation of contracts.

*Appeal from District Court, Lewis and Clarke County; J. M.*
*Clements, Judge.*

SUIT by Otis R. Allen against the Ajax Mining Company and
others.    From a judgment in favor of plaintiff, defendants ap-
peal.    Reversed.

*Messrs. H. G. & S. H. McIntire,* for Appellants.

It is evident that the lower court in granting the injunction
complained of herein had in mind and followed the decision of
this court in *Forrester* v. *Boston & Montana Consol. Min. Co.,*
21 Mont. 544, and it must be conceded that if said decision
states the law as it now exists in this state, the action of the
lower court under the facts presented in respondent's complaint
was correct.    Necessarily in order to reach its decision the lower
court must have disregarded and held invalid the Act of the
Sixth Legislative Assembly, adopted February 28, 1899, com-
monly known as "House Bill 132."    We shall contend that
said Act is a valid exercise of the legislative power and that

therefore the action of the lower court in granting the injunction in question was erroneous.

No act of the legislative assembly ought to be held invalid unless it plainly appears, beyond a reasonable doubt, that the act contravenes some provision either of the Federal or of the State Constitution; and that if any doubt exists as to an alleged repugnancy between the Constitution and the statute, such doubt must be resolved in favor of the validity of the statute.    Further, that "Constitutions of a state are distinguished from the Constitution of the United States in this: 'The government of the United States is one of enumerated powers; the National Constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess.    In this respect it differs from the constitutions of the different states, which are not grants of powers to the states, but which apportion and impose restrictions upon the powers which the states inherently possess.'    (Cooley on Const. Lim. p. 10.)    Therefore a state legislature is not acting under enumerated or granted powers, but rather under  inherent powers, restricted only by the provisions of their sovereign constitution."    (*State* v. *French,* 17 Mont. 54-56.)    And further, that in the construction of constitutions all provisions *in pari materia* are to be construed together so as to arrive at the meaning and intent of any particular provision.

The case of *Forrester* v. *B. & M. Co.,* 21 Mont. 544, was decided November 28, 1898, the Act of the legislature referred to was adopted February 28, 1899, and was undoubtedly passed to obviate the restraint imposed by the common law upon the alienation of property belonging to solvent, prosperous and going mining corporations.    For the purpose of this argument it may be conceded that the relations surrounding corporations and stockholders are contractual in their nature, and that such relations are three-fold.    (1) That between the state and the corporation.    (2) That between the corporation and its stockholders.    (3) That between the stockholders *inter sese.*

The constitutional provisions which it is said the statute in question contravenes are Section 10 of Article I of the Federal Constitution which prohibits the several states from passing any law impairing the obligation of contracts, and the like provision found in Section 11 of Article III of the Montana Constitution. In connection with this last provision consideration must be given to Section 2 of Article XV, which provides: "That no charter of incorporation shall be granted, extended, changed or amended by special law * * * but the legislative assembly shall provide by general law for the organization of corporations hereafter to be created; Provided that any such laws shall be subject to future repeal or alterations by the legislative assembly," and Section 3 of Article XV, which reads: "The legislative assembly shall have the power to alter, revoke or annul any charter of incorporation existing at the time of the adoption of this Constitution, or which may be hereafter incorporated, whenever in its opinion it may be injurious to the citizens of the state."

As far back as the *Dartmouth College Case,* 4 Wheat. 518, it was held by the Supreme Court of the United States that the charter of a corporation is a contract within the meaning of the said clause of the Federal Constitution and consequently protected from impairment by a state legislature. It was suggested in the concurring opinion of Mr. Justice Story in that case that it would be competent for the legislature to reserve the power to repeal or alter the grant of franchises embodied in the charter of a corporation. (Thompson's Commentaries on the Law of Corporations, Vol. 4, Section 5408.) It is well known that the several states were quick to avail themselves of this view of Judge Story, and we find also that the legislative assembly of the territory and state of Montana has from an early day reserved the power to alter, amend or repeal any of the laws of the territory or state relating to corporations. This reservation is found in Section 21, p. 410, Acts 1871-2, which was in turn re-enacted in the revision of 1879, Rev. Stat. 1879, p. 454, Sec. 264, in the compilation of 1887, Comp. Stat.

1887, p. 730, Sec. 466, and in the Civil Code of 1895, Section 394 and Section 550. The question then arises whether the statute in question is within the reserved power. (Thompson's Work on Corporations, Vol. 1, Section 90.) The cases construing this reserved power are practically innumerable and it is a difficult if not impossible task to reconcile them. This confusion would probably not have arisen if the underlying principle had been kept in mind, that the reservation is as much a part of the contract as the grant itself, in other words, that the grant, the authorization for corporation existence, and the relations flowing therefrom, as between the state and the corporation, the corporation and its stockholders, and between the stockholders, have all been taken and assumed with the understanding that they might be altered or repealed whenever the state saw fit to do so. As expressed by the Supreme Court of California in *Market St. Ry. Co.* v. *Hellman,* 109 Cal. 571, s. c. 42 Pac. 229: "When an individual becomes a stockholder in a corporation it is with the implied assent on his part to the right of the legislature to alter and amend the law within the scope of the constitutional provision and is as binding upon him as a contract to like effect of his own making would be." So far as we are aware the question is *res integra* in Montana, but "in the absence of a controlling precedent of our own, it is a salutary general rule to follow the decision of the Supreme Court of the United States." (*Ruby Chief M. & M. Co.* v. *Prentice,* 52 Pac. 210.) In support of our contention that the law in question is valid and clearly supported by the weight of authority we shall cite only a few cases such as, in our opinion, are the most analogous to the facts of the case at bar, and so far as possible, only those of the most recent date. (*Northern Central R. Co.* v. *State of Maryland* (1902), 187 U. S. 258, 267; *Looker* v. *Maynard* (1900), 179 U. S. 46; *Gregg* v. *Granby* (1901), 164 Mo. 616; *C. H. Venner Co.* v. *U. S. Steel Corp.* (1902), 116 Fed. 1013; *Williams* v. *Hall* (1900), 55 S. W. 706; Thompson on Corporations, Sec. 3034; 2 Cook on Corporations, Sec. 501; *In re Empire City Bank,* 18 N. Y. 199;

*In re Lee's Bank,* 21 N. Y. 9; *In re Reciprocity Bank,* 22 N. Y. 9; *McGowan* v. *McDonald,* 111 Cal. 57, 43 Pac. 418; *Bissell* v. *Heath,* 98 Mich. 472, 57 N. W. 585; *Dam Co.* v. *Gray,* 30 Me. 547; *Sleeper* v. *Goodwin,* 67 Wis. 577, 31 N. W. 335; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347; *Sinking Fund Cases,* 99 U. S. 700; *Market St. Ry.* v. *Hellman* (1895), 109 Cal. 571; *Durfee* v. *Old Colony & F. R. Ry. Co.,* 5 Allen, 240; *Crease* v. *Babcock,* 23 Pickering, 342; *Buffalo, etc. R. R.* v. *Dudley,* 4 Kernan (N. Y.), 336, 348, 354; *Northern R. R.* v. *Miller,* 10 Barbour, 282; *Madow Dam Co.* v. *Gray,* 30 Me. 547; *Old Town, etc. R. Co.* v. *Veasie,* 39 Mr. 580; 1 Thompson on Corporations, Secs. 67, 75, 89; 4 Thompson on Corporations, Secs. 5409, 5410, 5411, 5417.)

Again, inasmuch as the statute provides (Section 2) that if a disposition of all the company's property is had the corporation shall thereby be dissolved, it may be construed as a method of repeal of the charter. That the right to repeal, under the reserved power, either wholly or in part and without the consent of the stockholders, exists is unquestionable (*Deposit Bank* v. *Davis Co.,* 44 L. R. A. 825, 829, *et seq.; Citizens Sav. Bank* v. *Owensboro,* 173 U. S. 636; *Williams* v. *Nall,* 55 S. W. 706, 708.)

The provisions for the payment to dissenting stockholders contained in Sections 2 and 3 of the Act are ample, valid and in line with similar statutes in other states. (3 Cook on Corporations (5th Ed.), Sec. 896, p. 2583.)

The Act in question is neither special nor class legislation. (*Williams* v. *Nall,* 55 S. W. 709; *King* v. *Elling,* 24 Mont. 476; *Home B. & L. Ass'n* v. *Nolan,* 21 Mont. 205.)

*Mr. William Wallace, Jr.,* and *Mr. Charles Donnelly,* for Respondents.

Since the decision of the *Dartmouth College Case* by the Supreme Court of the United States in 1819 (4 Wheat. 504), the principles have been recognized as established (though frequently and vigorously criticized) that a corporate charter

granted by a state is, when accepted by the corporation, a contract within the meaning of Section 10 of Article I of the Constitution of the United States, and that unless power to alter or amend it has been reserved by the state which granted it, any alteration of it is an attempted impairment of that contract and so forbidden by that section. Since the announcement of these principles in the *Dartmouth College Case,* it has been the almost invariable practice of the states to reserve in their respective constitutions and laws the power to repeal, alter or amend the corporate charters granted by them. This the state of Montana has done in the sections of our Constitution and statutes cited in appellants' brief; and the authorities are all agreed that the effect of doing this is to take out of the operation of the rule laid down in the *Dartmouth College Case* a charter granted by a state reserving these rights, and to retain in the state full legislative control over it. The principle that the charter is a contract is not denied; but the reservation is read into and becomes a part of the contract, and leaves it subject to repeal, alteration or amendment at the hands of the state. As counsel for appellants have pointed out, however, the contract thus arising with the state is not the only contract incident to the formation of the corporation. There arises besides a contract which is spoken of as a contract between the stockholders themselves, or as a contract between the corporation on one hand and the stockholders on the other; and of this contract, as of every other, the existing law, so far as it applies, of course becomes a part. The defendant corporation was organized under the laws of the state of Montana prior to the year 1899; plaintiff has been a member of it since its organization; during all of that period it was the law of this state that no solvent, prosperous, going corporation could dispose of all of its property without the unanimous consent of all of its stockholders. Every person who became a member of a Montana corporation during that period had the security which this law gave to him, and might feel that so long as the corporation was solvent and prosperous, its property could not be disposed

of without his consent. These principles were clearly stated in the case of *Forrester* v. *Boston & Montana Consolidated Copper & Silver Mining Company,* 21 Mont. 544, 55 Pac. 229 (1898), and are not disputed by counsel for the appellants. On February 28, 1899, the Act in question became a law. By its terms it professes to authorize any corporation, whether then existing or thereafter to be created, and whether solvent or insolvent, to dispose of all its property, despite the protest of the holders of one-third of its stock. The effect of this enactment as applied to an existing corporation is two-fold. First, it augments the powers previously conferred upon it and so far is unexceptionable; because aside from the fact that it was a bestowal of a benefit on the corporation, the right to add to, subtract from or wholly withdraw the powers previously conferred had been expressly reserved. But, second, it altered, or rather destroyed, the contract previously existing between the stockholders themselves. That contract was that so long as the corporation remained solvent its property would not be disposed of without the consent of all of its members. Any attempt by a portion of its members to make a disposition of such property involves a violation of this contract, and any law assuming to authorize such an attempt impairs the obligation of the contract within the meaning of the constitutional prohibition. These propositions are supported by the following authorities: Cook on Corporations (6th Ed.), Sec. 501; *Zabriskie* v. *Hackensack & N. Y. R. R. Co.,* 18 N. J. Eq. 178; *Black* v. *Canal Co.,* 24 N. J. Eq. 455; *Miles* v. *Ry. Co.,* 41 N. J. Eq. 1; *Intiso* v. *State,* 53 Atl. 206; *Rahway* v. *Munday,* 44 N. J. Law, 395; *Johnson* v. *Sherman,* 66 N. J. Law, 683; *Schwartzwaelder* v. *Ins. Co.,* 59 N. J. Eq. 589; *In re Newark Library Ass'n,* 43 Atl. 435; *Kenosha, etc. Ry. Co.* v. *Marsh,* 17 Wis. 13; *Union Pac. Ry. Co.* v. *United States,* 99 U. S. 700; Dissenting Opinion of Mr. Justice Bradley in the *Sinkink Fund Cases;* Dissenting Opinion of Mr. Justice Field in the *Sinking Fund Cases.*

Turning now to the cases cited by appellant, it must be con-

ceded at once that some of them are opposed to the views above expressed. As counsel for appellants have said, the authorities on this question are not reconcilable, and the cases just referred to are certainly opposed to those on which we rely as justifying the order appealed from. Some of the authorities, however, cited by counsel are, as we think, distinguishable from the case at bar. In the case of *Northern Central Railway Company* v. *Maryland,* 187 U. S. 258, the point decided was simply that by virtue of the reserved right to amend or repeal a charter, the state had the power to change and increase the rate of tax-ation stipulated for in a law which had become a part of the charter. The question of the state's power over contracts between stockholders themselves was not touched upon. The same is true of the case of *Spring Valley Water Works* v. *Schatler,* 110 U. S. 247. An Act of the legislature was sustained affect-ing an alteration only in the contract existing between the state and the corporation. By the original charter (given subject to the reserved right of amendment), one method of fixing upon reasonable water rates was prescribed, and the amendment pro-posed to substitute another. The right to do so under the reser-vation was clear, and contracts between the stockholders them-selves could not be affected by its exercise. In *Durfee* v. *Old Colony Railroad Co.,* 5 Allen, 240, the point decided was sim-ply that a corporation organized under the laws of a state, which had reserved the right to amend its charter, could not be restrained by one of its stockholders from engaging in a new enterprise, authorized by a legislative enactment, such new enterprise being of the same kind as that for which the corpo-ration was originally established. The case of *Williams* v. *Nall,* 55 S. W. 706 (Kentucky 1900), while fully sustaining the doctrine contended for by appellants, affords, as we think, an excellent illustration of the dangers that would attend on the establishment of that doctrine. We respectfully insist that this reasoning is unsound. The reserved right of a state to amend the charters of its corporations has no special force that does not inhere in the right which every state possesses to amend

any of its laws. An individual who makes a contract makes it on the faith of existing law; he knows that the law enters into it; he knows, too, that except in very rare cases there exists in the state the power of repealing, altering or amending that law which does so enter into it. But his contract is protected by the state and federal constitutions, and therefore the legislature is powerless to make a law which shall alter or impair it. How can the rule be different in the case of a corporation? How can it be lawful for the state to do to the existing contracts of an association of men what it cannot do to the contracts of a single individual? The right to change an existing law is no greater in the one case than in the other, and we think it cannot be given greater effect in the one case than in the other. It is perfectly apparent that if the principle laid down in the case of *Williams* v. *Nall* were to become generally recognized, capital would be slow to embark in corporate enterprises for the reason that there could never be any certainty as to what its obligations would be. This reserved power of amending corporate charters exists in the constitutions of all states; and if its effect is to render contracts of corporations uncertain, to make the rights and obligations of the contracting parties alterable at the pleasure of the legislature, no one would think of becoming a member of a corporation and assuming such responsibilities. Surely full effect can be given to the constitutional reservation by confining its action to the contract between the state and the corporation. Moreover, there appears in our statute, in existence when the defendant corporation was organized (Compiled Statutes of 1887, page 730, Sec. 466, Civil Code, Sec. 394), a clause which we have not found in any of the states from which appellants have drawn the cases on which they rely. This clause seems to recognize the distinction on which we have been insisting. After providing in the usual way that the legislature may repeal, alter or amend, etc., the statute reads: "But such amendment or repeal does not, nor does the dissolution of any such corporation, take away or impair any remedy given against such corporation, its stock-

holders or officers, for any liability which has been previously incurred." Had the stockholders of the defendant corporation, on the day it was organized, signed a formal agreement, binding upon each other, that so long as its business prospered they would not dispose of its property, unless all consented to do so, no one would doubt that this contract was independent of the contract between the state and the corporate body; nor would any one doubt that a law authorizing some of the contracting parties to violate this contract, and do what all had agreed not to do, would impair its obligation. And yet such a contract was made just as effectively with each man who became a member as if it had been made the subject of a special written agreement; and the legislature has no more right to impair its obligation than if it had been thus independently made. Nor can the statute be regarded as simply effecting the dissolution of a corporation and therefore within the power reserved. The right of the state to repeal the corporate powers which it has granted, whenever the interest of the state requires their repeal, is of course incontestable; but this statute does not do this. It empowers the holders of two-thirds of the stock to dissolve the corporation, and this notwithstanding their positive engagement to continue it. It is not reasons of state that prompt a dissolution, but the mere personal inclination of the majority stockholders to override the will of the minority. And besides, this statute assumes, not simply to authorize the dissolution of a solvent corporation, but to deprive the minority stockholders of their voice in the disposition of its property. This the legislature cannot do.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On May 3, 1904, the respondent, as plaintiff, commenced an action in the district court of Lewis and Clarke county, the object of which was to secure an injunction restraining the defendants from disposing of certain mining property belonging

to the defendant, Ajax Mining Company, a Montana corporation, to the National Prospecting & Development Company, a New Jersey corporation. The defendants Babcock, Marlow, Larson, Tracy and Smith own and control 81,900 shares of the outstanding capital stock of the Ajax Mining Company, that being all the capital stock outstanding, except 100 shares owned by the plaintiff. This mining company is a prosperous, going concern, operating certain properties in Broadwater county, Montana. The defendants Babcock, Marlow, Larson, Tracy and the plaintiff are the directors of the company, which was organized and empowered to "carry on the business of mining, purchasing, selling and dealing in mining property, running tunnels, appropriating ground for other necessary mining purposes; and the mining, smelting, reduction and shipment and selling ores, building mining improvements, constructing mills, and all other purposes incident to the business of mining or connected therewith." In April, 1904, the National Prospecting & Development Company made a proposal to purchase all the property of the Ajax Mining Company, paying therefor forty per cent. of the capital stock in the New Jersey company. After consideration of this proposal, the defendant directors passed a resolution calling a meeting of the stockholders of the Ajax Mining Company for the purpose of considering the question of accepting such proposal to purchase and acquire all the property and assets of every kind belonging to that company upon the terms proposed, and directing notice of such meeting to be given as required by law. Pursuant to this resolution the defendant directors caused a notice of such stockholders' meeting to be published, but, before this meeting was held, this action was commenced by the plaintiff, who did not consent to such sale. The plaintiff alleged that the defendant stockholders intended to accept the offers of the National Prospecting & Development Company, and intended to sell and convey to it all the property of the Ajax Mining Company, and would do so unless restrained by the court. Upon the filing of this complaint and the issuance of summons, the district court, on the

application of the plaintiff, issued a temporary injunction re-
straining the defendants from voting or allowing to be voted
any of the capital stock of the Ajax Mining Company in favor
of the sale of the property, and from taking any steps or pro-
ceedings preparatory to, or looking towards, the consummation
of such sale. From the order granting this injunction, the de-
fendants appealed.

It is conceded that the only question involved is the consti-
tutionality of an Act of the Sixth legislative assembly, entitled
"An Act to enlarge the powers of mining corporations to dis-
pose of, sell, lease, mortgage, exchange, or otherwise convey,
all or any part of the property of such corporations, and to
authorize and empower such corporations to dispose of, sell,
lease, mortgage, or otherwise convey, the whole or any part of
the property of such corporations, and to protect stockholders
dissenting from such action of such corporations," passed over
the governor's veto February 28, 1899 (Session Laws 1899, p.
113), and commonly known as "House Bill 132." That Act, in
substance, provides that the board of directors or trustees of
any mining corporation organized under the laws of either the
territory or state of Montana, whether before or after the pass-
age of the Act, and whether the same is solvent or insolvent,
or is a going or prosperous concern, or otherwise, shall have the
power, and, upon request of stockholders representing at least
one-half of the outstanding capital stock, it shall be their
duty, to call a meeting of the stockholders for the purpose of
considering the question of selling, leasing, mortgaging, ex-
changing, or disposing of the whole or any part of the property
of such corporation for other property, or of the whole or part
of the capital stock of any other corporation, whether domestic
or foreign. Provision is then made for the method of calling
such stockholders' meeting, and, upon the concurring vote of
holders representing two-thirds of the outstanding capital stock,
the directors shall have full power and authority to carry out
the sale, lease, mortgage or exchange or other disposition or
conveyance of the whole or any part of the property of said

corporation, to the same extent as if all the stockholders of the corporation had consented thereto.

Section 2 provides that, if a disposition of all the property of the corporation shall be made, the corporation shall thereby be dissolved.

Section 3 provides for the protection of dissenting stockholders by payment of the appraised value of their stock; the appraisers thereof to be appointed by the district court of the county wherein is situated the principal place of business of the corporation; all expenses to be borne by the corporation, its grantee or vendee.

Section 4 provides for an appeal to the district court from such award, and the ascertainment of the value of the stock by a jury, as in condemnation proceedings provided for by law, and for the rendition of judgment and execution in favor of the dissenting stockholder for the award and expense and cost of the proceedings, which judgment shall be a lien upon all the real property so disposed of, superior to the rights of the grantee or vendee, the claims of dissenting stockholders being equal liens upon the property. Upon the payment of the claims, the dissenting stockholder shall cease to have any further interest in the corporation, and his stock shall become the property of the party satisfying the judgment or appraisement.

If this Act is valid, the district court erred in issuing the injunction.

It is contended by respondent that the Act is invalid, for the reason that its enforcement would impair the obligation of corporation contracts, and therefore the Act violates Section 10, Article I, of the Constitution of the United States, and Section 11, Article III, of the Constitution of Montana.

By the decision of the Supreme Court of the United States in the *Dartmouth College Case* in 1819 (*Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. Ed. 629), it was finally determined in this country that a charter granted by a state to a corporation became, when accepted by the corporation, a contract, within the meaning of the Federal Constitution, and

that any legislative enactment which attempts to alter or amend it in any substantial particular impairs the obligation of that contract, and is void, unless the power or authority to alter or amend such charter is reserved by the state which granted it. In his concurring opinion in that case, Mr. Justice Story, after citing with approval *Wales* v. *Stetson,* 2 Mass. 143, 3 Am. Dec. 39, to the effect that the legislature cannot modify the charter of a corporation unless the power is reserved in the act of incorporation, emphasizes his approval of that doctrine by saying: "If the legislature mean to claim such authority, it must be reserved in the grant."

It is a part of the history of our jurisprudence that the states were quick to seize upon the suggestion of Mr. Justice Story, and have, with singular unanimity, adopted constitutional and statutory provisions reserving to themselves the right and authority to alter or amend all corporation charters. Prior to the adoption of the Constitution, the territory of Montana had made such reservation as early as 1871, and a like provision was carried forward in the revision of 1879, in which is comprised a comprehensive article containing all the then existing laws with reference to the organization of corporations for industrial and productive purposes, and in which is found this provision: "Sec. 264. The legislature may at any time alter, amend or repeal this article. * * *" This remained in force until the compilation of 1887. Chapter 25, Fifth Division, Compiled Statutes, was then adopted, embracing the laws then in force respecting the organization of such corporations; and this included Section 466, which reads as follows: "Sec. 466. The legislature may at any time alter, amend or repeal this chapter. * * *" This chapter remained in force until superseded by Division I, Part IV, of our Civil Code of 1895, which furnishes a complete system of laws relating to the formation of corporations in this state. Sections 394 and 550 of that part of the Civil Code read as follows:

"Sec. 394. Every grant of corporate power is subject to alteration, suspension or repeal, in the discretion of the legislative assembly."

"Sec. 550. The legislative assembly may at any time amend or repeal this part, or any title, chapter, article or section thereof, and dissolve all corporations created thereunder.   *   *   *"

That there might not be any question as to the authority of the legislature to make such reservations, the Constitution (Article XV, Sec. 2) provides: "Sec. 2. No charter of incorporation shall be granted, extended, changed or amended by special law, * * * but the legislative assembly shall provide by general law for the organization of corporations hereafter to be created: provided, that any such laws shall be subject to future repeal or alterations by the legislative assembly."

It is apparent, then, that when the Ajax Mining Company was organized, some time between 1889 and 1898, there existed and was read into and made a part of its charter the then existing statute, which gave notice to all concerned that the legislature of Montana, acting under the constitutional provision above, might at any time alter, amend or repeal the law under which it existed.

Respondent contends that the contractual relation respecting a corporation is of a threefold character, namely, first, a contract between the state and the corporation; second, a contract between the corporation and its stockholders; and, third, a contract between the stockholders *inter sese,* and that, while the state might properly reserve to itself the right and the authority to change the contract between itself and the corporation, it cannot, and it was never intended that it should, in any manner interfere with or impair the obligation of the contract existing among the stockholders themselves, and that any attempt to do so is a violation of the Federal Constitution, and authorities are cited in support of this position. But it is to be observed that in all these legislative enactments the state did reserve to itself the right to repeal the law under which this corporation was organized, and, had it done so, the corporation would have been destroyed, except for the purpose of winding up its business. Yet it cannot be said that the state did not have this power, for the statute authorizing it was in existence when the

corporation was organized, and was read into and became as much a part of the charter as if expressed in terms in that instrument itself. And if the state reserved the right and power by a repeal of the law creating the corporation to destroy it, it certainly did less when, instead of repealing the law, it amended it by House Bill 132.

It is true that at the time of the formation of the Ajax Mining Company, and for several years thereafter, the majority stockholders of a corporation could not dispose of all the property of a prosperous, going concern without the consent of the minority. (*Forrester et al.* v. *Boston & Montana C. C. & S. M. Co.*, 21 Mont. 544, 55 Pac. 229.) But that doctrine prevailed only because the state had not seen fit to exercise the right which it possessed to call into activity this dormant power theretofore reserved to itself. And it is likewise true that the plaintiff, Allen, when he subscribed for stock in this company, did so, charged with the full knowledge of the constitutional and statutory provisions then existing, under which the legislature might at any time alter, amend or repeal the provisions of the law which was made a part of its charter; and he must therefore be treated as having given his tacit consent that such changes might be made at any time as in the wisdom of the legislature might be necessary, and this as fully as if he had signified such consent by a writing duly subscribed by himself.

It cannot be said, then, that the enforcement of the provisions of House Bill 132 will impair the obligation of any contract which the plaintiff entered into when he became a stockholder of this company, for the reason that the reservation of this authority to alter, amend or repeal the law under which the company was organized became as much a part of the law of its creation as any other provision respecting it, and became a part of the charter, modifying what would otherwise have been an absolute grant. (4 Thompson on Corporations, 5408.)

It is to be understood, too, that this reservation possesses equal vigor, whether contained in the charter of the particular corporation itself, or in the Constitution or general laws of the

state under which the corporation is organized. While there may be some slight conflict in the authorities, the great weight of authority clearly and unequivocally sustains such statutes. (*Market Street Ry. Co.* v. *Hellman,* 109 Cal. 571, 42 Pac. 225; *Looker* v. *Maynard,* 179 U. S. 46, 21 Sup. Ct. 21, 45 L. Ed. 79, and cases cited; *Northern Central Railway Co.* v. *Maryland,* 187 U. S. 258, 23 Sup. Ct. 62, 47 L. Ed. 167; *Venner Co.* v. *Steel Corporation* (C. C.), 116 Fed. 1012.) The theory upon which these statutes are upheld is that whatever rules or regulations for the management, operation or control of a corporation which the legislature might have incorporated in the law under which the corporation was organized may afterwards properly be ingrafted on its charter by virtue of this reserved power existent at the time of the formation of the corporation. (*Sinking Fund Cases,* 99 U. S. 700, 25 L. Ed. 496; *Spring Valley Water Works* v. *Schottler,* 110 U. S. 347, 4 Sup. Ct. 48, 28 L. Ed. 173; *Market St. Ry. Co.* v. *Hellman,* above; *McGowan* v. *McDonald,* 111 Cal. 57, 43 Pac. 418, 52 Am. St. Rep. 149; *Williams* v. *Nall,* 108 Ky. 21, 55 S. W. 706.) A review of the authorities citing numerous instances of the enforcement of such statutes is found in 4 Thompson on Corporations, Sec. 5411.

We are therefore of the opinion that the statute is not open to the attacks made upon it, and that the district court erred in· granting an injunction. The order is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE MILBURN, not having heard the argument, takes no part in this decision.