SOMERVILLE ET AL., APPELLANTS, *v.* ST. LOUIS M. & M. CO., RESPONDENT.

(No. 3,241.)

(Submitted October 19, 1912. Decided October 26, 1912.)

[127 Pac. 464.]

*Corporations—Making Stock Assessable—Constitutional Law—Charter—Power of State to Amend Laws—Contracts Impairing Obligations.*

Corporations—Making Stock Assessable—Votable Stock—Statutes.

1.   The provision of section 511, Civil Code of 1895 (Rev. Codes, sec. 3888), requiring a two-thirds vote "of the stock of the company" to render its theretofore nonassessable stock assessable, has reference to outstanding, votable stock, exclusive of that remaining in the treasury.

Same—Constitution—Charter—Amendment of Laws—Power of State.

2.   The power reserved in the state to amend the laws under which a corporation is organized may be exercised not only as relates to the contract (created by the granting of the charter and its acceptance) existing between the state and the corporation, but also as it affects the contract between the corporation and its stockholders, and the stockholders *inter sese;* and any legislation looking to that end is not objectionable on the constitutional ground that it impairs the obligation of contracts.

Same—Case at Bar.

3.   Defendant corporation was organized under Chapter 25, Division 5, Compiled Statutes of 1887, when there was not any law under which nonassessable stock could be made assessable. Its certificate of incor-

poration and every stock certificate isued recited that the stock was nonassessable. In 1901 the requisite number of shares of stock were voted in favor of making the stock assessable, under Laws of 1893, page 92. *Held,* under the rule declared in paragraph 2 above, that such Act (Rev. Codes, sec. 3888) is not unconstitutional as impairing the obligation of the contract existing between the corporation and its stockholders, and the latter *inter sese.*

Same—Charters—Legislation Part of Contract.
4. The legislation in force at the time of the organization of a corporation enters into and becomes a part of the contract thus entered into, to the same extent as if set forth at length in the charter.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by J. C. Somerville and others against the St. Louis Mining and Milling Company of Montana. From an order denying an injunction, plaintiffs appeal. Affirmed.

*Messrs. Walsh & Nolan,* and *Messrs. Gunn, Rasch & Hall,* submitted a brief in behalf of Appellants; *Mr. M. G. Gunn* argued the cause orally.

By virtue of this statement in the certificate of incorporation and the statement in the certificate of stock issued, that the stock should be nonassessable, a contract was entered into between the corporation and each stockholder that no assessment would be levied upon the stock issued to him. (*Wall* v. *Basin Min. Co.,* 16 Idaho, 313, 101 Pac. 733.) As said by the supreme court of the United States in the case of *Scoville* v. *Thayer,* 105 U. S. 143, 26 L. Ed. 968, such a contract "was not forbidden by the charter of the company or by any law or public policy, and as between the company and its stockholders was just as binding as if it had been expressly authorized by the charter." If however, section 511 of the Civil Code authorized the defendant to repudiate the contract thus made with the stockholders, and to render its stock assessable, it is in violation of the prohibition in the Constitution of the United States against laws impairing the obligation of contracts. (*Garey* v. *St. Joe Min. Co.,* 32 Utah, 497, 12 L. R. A., n. s., 554, 91 Pac. 369.)

The case of *Allen* v. *Ajax Min. Co.,* 30 Mont. 490, 77 Pac. 47, was cited at the argument in the lower court, as conclusive of

the proposition that it was within the power of the legislative assembly to authorize the making of the stock of the defendant assessable.   The decision in that case is not an authority in support of the constitutionality of section 511.   As said by the supreme court of Utah, in the case of *Garey* v. *St. Joe Min. Co.*, the only purpose of the reservation of the power to repeal, amend or modify is to obviate the effect of the decision in the *Dartmouth College Case.*   That case had reference solely to a contract between the corporation and the state, in which the public was interested.   The public has no interest in a contract between the corporation and the stockholders with reference to the assessability of the stock.

It was claimed for the defendant in the argument of this case in the lower court that the plaintiff Mayger, is estopped from contesting the right to collect assessments because of his participation in the proceedings to make the stock assessable.   If, as we contend, there was no authority to make the stock assessable, the fact that he voted in favor of the proposition would not operate as an estoppel against him.   (*Scoville* v. *Thayer,* 105 U. S. 143, 26 L. Ed. 968.)   But, even if Mr. Mayger is estopped, the other plaintiffs, who were stockholders at the time, did not attend the meeting, either in person or by proxy.   The evidence discloses that several assessments had been levied against the stock of the plaintiffs and had been paid by them. This fact, however, does not preclude them from now contesting the right to levy future assessments.   (2 Clark and Marshall on Corporations, 1269.)

*Messrs. H. G. & S. H. McIntire,* for Respondent, submitted a brief; oral argument by the former.

In support of their contention they cite the case of *Garey* v. *St. Joe Min. Co.*, 32 Utah, 497, 12 L. R. A., n. s., 554, 91 Pac. 369.   The Utah court is certainly in error when it holds that "the only purpose of the reservation of the power to repeal, amend or modify is to obviate the effect of the decision in the *Dartmouth College Case.*"   Thus in 1 Thompson on Corporations, section 90, it is said: "The reserved power of the legis-

lature extends not only to altering the charter, for any purpose connected with the public interests, but also to altering it for the mere purpose of changing the rights of the corporators as among themselves. This view has been taken in New York, in Massachusetts, in Illinois, in Missouri, and in other states. A necessary result of this doctrine is that the legislature may authorize any change in the organization, purposes or powers of the corporations which the majority may desire, contrary to the will of the minority." (See, also, *Looker* v. *Maynard*, 179 U. S. 46, 45 L. Ed. 79, 21 Sup. Ct. Rep. 21; *C. H. Venner Co.* v. *United States Steel Co.*, 116 Fed. 1013; *Market St. Ry. Co.* v. *Hellman*, 109 Cal. 571, 42 Pac. 225; *Williams* v. *Nall*, 108 Ky. 21, 55 S. W. 706; *Missouri R. R. Co.* v. *Kansas*, 216 U. S. 274.)

If any of the minority stockholders were not satisfied that their stock should be charged with this additional liability, they had it in their power, by suitable and seasonable legal proceedings, to prevent the majority stockholders and the corporation from incurring liabilities which would call the change into effect. This is elaborated in the case of *Dow* v. *Northern R. R.*, 36 Atl., on page 521.

A stockholder may be estopped from objecting to an amendment by his express or implied acquiescence therein. (*Ireland* v. *Palestine etc. Co.*, 19 Ohio St. 369; *Weeks* v. *Silver etc. Co.*, 55 N. Y. Super. Ct. 1; *Synott* v. *Cumberland B. L. Assn.*, 117 Fed. 379, 385, 386, 54 C. C. A. 553.) Any acts indicating an acceptance by him of the amendment bind him and bar his suit. (2 Cook on Corporations, 5th ed., 1041.) If the complaining stockholder participated in the act complained of, he, of course, is barred of his remedy. (*Id.*, 1849; *Kent* v. *Mining Co.*, 78 N. Y. 186.)

The doctrine of laches is clearly applicable here, for we have before us not only acts of acquiescence, but an unreasonably long time without adverse action, during which others have acted on the apparent regularity of the precedent action of the present plaintiffs. And so is the statute of limitations, for if any wrong was done plaintiffs by the action of the defendant

company, it was done in 1901, and the section of the Revised Codes, section 6451, which is pleaded in the answer, is a bar.

Unless he acts promptly to disaffirm, a stockholder is bound by the act of his proxy and may not contest the regularity of the proceedings. (2 Cook on Corporations, 5th ed., 1036; *Synnott* v. *Cumberland B. L. Assn.,* 117 Fed. 379, 54 C. C. A. 553; *Columbia Nat. Bank* v. *Mathews,* 85 Fed. 939, 29 C. C. A. 491.)

MR. JUSTICE HOLLOWAY delivered the opinion of the Court.

The St. Louis Mining and Milling Company is a domestic corporation, organized under the provisions of Chapter 25, Division 5, General Laws, Compiled Statutes of 1887, with a capital stock of $5,000,000, represented by 500,000 shares of the par value of $10 each. The certificate of incorporation and every stock certificate issued prior to 1901 recites that the stock of the corporation is nonassessable. In 1901 a meeting of the stockholders of the corporation was held, at which 304,680 shares were represented in person, and 52,590 shares by proxy. William Mayger was present, representing in person 152,780 shares, and, with proxies held by him, voted 184,020 shares. Charles F. Mayger was present, representing in person 151,900 shares, and, with proxies held by him, voted 173,050 shares. At the time 44,000 shares of the capital stock were held in the treasury of the company. At this meeting 357,070 shares were voted by William and Charles F. Mayger, in person and by proxies, in favor of changing the capital stock from nonassessable to assessable stock, and there were not any votes cast against the proposition. William Mayger, as the holder of 184,020 shares in person and by proxy, gave his consent in writing, spread upon the corporation's records, to the change, and Charles F. Mayger, as the holder of 173,050 shares in person and by proxy, gave the like consent. Due notice was given of the meeting, and the proper certificates were prepared and filed, certifying to the change. Assuming to act upon the authority thus conferred, several assessments were levied and collected without

protest.   On June 6, 1912, another assessment was levied.   These plaintiffs, as stockholders, refused to pay the assessment and brought this action to restrain the officers, directors and agents of the company from selling their stock upon which the assessment was delinquent.   The district court refused to grant an injunction after a hearing, and plaintiffs appealed from the order.

At the time the defendant corporation was organized, there were in force Chapters 25 and 26, Division 5, Compiled Statutes, above.   Chapter 25 deals with the formation and government of industrial corporations generally, while Chapter 26 deals with the subject "Assessments upon the Stock of Corporations." Section 466 of Chapter 25 provides: "The legislature may at any time alter, amend or repeal this Chapter."   Chapter 26 provides generally for levying and collecting assessments upon corporate stock.   Section 512 of that chapter declares: "The provisions of this Chapter shall only apply to such corporations hereafter formed, as shall specify in its articles of incorporation the fact that the stock of such corporation shall be assessable; and any company or corporation hereafter formed, that wishes to avail itself of the provisions of this Chapter, and render its stock assessable, shall specify in its articles of incorporation, in addition to the statement now required by law, a statement to the effect that the stock of such corporation is assessable." Section 2, Article XV, of our state Constitution, reads as follows: "No charter of incorporation shall be granted, extended, changed or amended by special law,   *   *   *   but the legislative assembly shall provide by general law for the organization of corporations hereafter to be created: provided, that any such laws shall be subject to future repeal or alterations by the legislative assembly."   Section 394, Civil Codes of 1895 (Rev. Codes, sec. 3809), declares: "Every grant of corporate power is subject to alteration, suspension or repeal, in the discretion of the legislative assembly."   By an Act approved March 7, 1893 (Laws 1893, p. 92), it is provided: "Any corporation heretofore formed under the laws of this state, may, by and with

the consent of the stockholders holding two-thirds of the stock of the company, in writing, spread upon the records of such corporation, render its stock assessable, under the provisions of this Chapter.'' This last Act was brought forward into the Codes of 1895 as section 511 (Rev. Codes, sec. 3888), and was in full force and effect at the time the stockholders' meeting was held in 1901.

1. The proceedings of the stockholders' meeting are attacked, and it is said that the consent of the holders of two-thirds of the capital stock was not given to the change, (a) because the proxies held by William and Charles F. Mayger only authorized the holders to vote the stock, and did not authorize them to consent to this change; and (b) if this be so, then the holders of only 304,680 shares gave such consent. It is unnecessary to determine the effect of the proxies; for at the time the meeting was held 44,000 shares of the capital stock were in the treasury **[1]** of the corporation, leaving only 456,000 shares outstanding. When the statute (sec. 511, Civil Code) speaks of two-thirds of the stock of the corporation, it refers to outstanding, votable stock. (*Market St. Ry. Co.* v. *Hellman,* 109 Cal. 571, 42 Pac. 225; 2 Cook on Corporations, 6th ed., sec. 613.) The two Maygers represented in person more than two-thirds of the 456,000 shares outstanding, and each voted his stock in favor of the change and consented in writing to the change. So far as disclosed by the record, the proceedings taken to render the stock assessable were taken in compliance with the law and were effective for the purpose, if the statute under which the change was sought to be made was valid.

2. Certain principles of the law relating to corporations are so well settled that, as to them, there is not any difference of opinion. (1) The charter granted by a state to corporation, when accepted, becomes a ''contract'' within the meaning of the contract clause of the federal Constitution. (*Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. Ed. 629.) (2) Such contract operates in a threefold relationship, *viz.:* (a) Between the state and the corporation; (b) between the corporation and

its stockholders; and (c) between the stockholders *inter sese.*
(3) A state may reserve the right to alter or amend the charter
of a corporation, or to alter, amend, or repeal the laws under
which the corporation was organized. And (4) the provisions
of our state Constitution and the statutes referred to above con-
stitute such a reservation of power and authority.

Counsel for appellants insist, however, that this reserved
**[2 and 3]** power can be invoked to affect the contract, only as it
exists between the state and the corporate entity, and that if,
by enacting section 511, Civil Code above, it was the purpose of
the legislature to provide for a change in the contract so far as
it exists between the corporation and its stockholders, or be-
tween the stockholders *inter sese,* then the Act operates to im-
pair the obligation of such contract and is void as contravening
the provisions of section 10, Article I, of the Constitution of
the United States. Few questions have vexed the courts and
text-writers more than the one arising over the construction to
be given the reservation which the states make respecting cor-
porations organized under their respective laws. If the ques-
tion was an open one in this jurisdiction, its discussion might
lead to fruitful results; but in *Allen* v. *Ajax Min. Co.,* 30 Mont.
490, 77 Pac. 47, the contention here made was considered at
length and the entire subject fully discussed. Our conclusion
in that case was that the reserved power may be exercised, not
only to alter the contract as it exists between the state and the
corporate entity, but as well to alter the contract existing be-
tween the corporation and its stockholders, and the stockholders
*inter sese,* to the extent that the authority to dispose of all the
corporate property—which was denied the corporation at the
time it was organized—may be conferred by subsequent legisla-
tion. With all due respect to the authorities holding differently,
we see no reason for changing our position, and the decision in
that case is conclusive against the appellants here, unless a dis-
tinction is to be drawn between the facts in that case and this
one; for upon a parity of reasoning, if the legislature may con-
fer upon a corporation the authority to dispose of all of its

property—a right denied to the corporation at the time it was organized—it may likewise provide for a change in the limited liability of the stockholders, by authorizing nonassessable stock to be made assessable upon such reasonable terms as the legislature may prescribe.

3. But counsel for appellants insist that a distinction is to be drawn between the facts in the *Allen Case* and the facts in this one, in this: That, whereas neither the charter of the Ajax Mining Company nor its stock certificates contained any assurance that the entire property of the company would not be sold without the unanimous vote of its stockholders, the certificate of incorporation of the St. Louis Mining and Milling Company, and every stock certificate issued by it prior to the meeting in 1901, contains the solemn assurance that the stock shall be nonassessable. If our view of reserved power is correct, then we think the difference between the facts in the two cases is one of form only and does not affect the ultimate question involved.

[4] The legislation in force at the time of the organization of a corporation enters into and becomes a part of the contract, to the same extent as if set forth at length in the contract; and, upon the theory which we have adopted, there was read into the charter of the Ajax Mining Company this statement, in effect: This corporation shall not without the unanimous consent of its stockholders dispose of all the corporate property, until such time as the legislature may authorize it to do so. And, upon the same theory, the recital in the charter of the St. Louis Mining and Milling Company that its stock should be nonassessable is to be read, in the light of the reserved power, to mean: This stock shall be nonassessable until such time as the legislature shall provide that it shall be assessable, or until such time as it is rendered assessable pursuant to legislation authorizing such change. If our theory of the reserved power is correct, and these stipulations are to be read into the charters of these companies, it follows, as of course, that section 511, Civil Code, above, does not impair the obligation of the contract entered into when the St. Louis Mining and Milling Company accepted its charter.

Upon the authority of *Allen* v. *Ajax Mining Co.*, above, the order denying plaintiffs an injunction is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument and takes no part in the foregoing decision.