FLORENCE ULLMAN BRESLAV, Suing as a Stockholder of New York and Queens Electric Light and Power Company on Behalf of Herself and All Other Stockholders Similarly Situated, Appellant, *v.* NEW YORK AND QUEENS ELECTRIC LIGHT AND POWER COMPANY and Others, Respondents.

Second Department, December 4, 1936.

*Arthur V. McDermott* [*Weissman & Maretz* with him on the brief], for the appellant.

*William L. Ransom* [*Robert E. Coulson* and *Forbes D. Shaw* with him on the brief], for the respondents.

JOHNSTON, J.  The question presented involves the construction of paragraph (G) of section 36 of the Stock Corporation Law, which provides:

" A stock corporation may effect one or more of the following purposes:  *   *   *

"(G) *To classify or reclassify any shares,* either with or without par value; and to authorize the issuance from time to time in one or more series of the shares of any class of stock which is preferred as to dividends or assets; subject to the limitations prescribed in section eleven."

The limitations embodied in the statute just quoted, and described in section 11, merely permit the creation and issuance of two or more classes of shares with such designations, preferences, privileges, and voting powers, or the restrictions or qualifications thereof, as the certificate of incorporation or other certificate creating such shares may provide. Section 37 specifies the vote necessary to make the several changes enumerated in section 36, and provides that the change contemplated by paragraph (G) must be authorized by the holders of record of two-thirds of the outstanding shares.

Plaintiff is the owner of five shares of the preferred and a like amount of the common stock of the New York and Queens Electric Light and Power Company (hereinafter called the Queens Company). Defendants are the Queens Company, its principal stockholder, Consolidated Edison Company of New York, Inc., (hereinafter called the Edison Company), and the eleven directors of the Queens Company, all of whom are the representatives of the Edison Company and six of whom are also trustees of the Edison Company. The issued and outstanding stock consists of 12,500 shares of non-callable preferred stock of $100 par value and 429,766 shares of common stock without par value. The Edison Company owns ninety-eight per cent of the common stock and approximately seventy-six per cent of the preferred stock.

Plaintiff in this representative action seeks a permanent injunction restraining defendants from consummating a plan to amend the charter of the Queens Company in so far as it provides that the present non-callable preferred stock will be reclassified so as to make it callable at $105 per share at the option of the company. The learned Special Term denied plaintiff's motions for an injunction *pendente lite* and granted defendants' motion to dismiss the complaint.

The first question to be determined is: Does the statute authorize the proposed change in the corporation's present capital structure? It will be observed the above subdivision does not specifically authorize existing non-callable stock to be reclassified so as to make it callable. It is argued, however, that, as section 36 authorizes many changes with respect to " shares, capital stock or capital," it may be assumed the Legislature intended to permit a change making non-callable stock callable by a vote of two-thirds of the outstanding shares. We think not. The statute is comprehensive in scope, and the failure expressly to provide that existing permanent stock may be converted into callable stock indicates no such authority was granted or contemplated. To classify or reclassify shares means to arrange them in groups and to designate them as common, preferred, first preferred, second preferred, etc. Making

non-callable stock callable is neither classification nor reclassification. It is the creation of a new right in favor of the corporation and results in the destruction of an absolute ownership and the substitution of a defeasible ownership. To hold the Legislature has sanctioned the proposed change, we must give the statute an effect concededly not expressed and, we believe, not implied. While in determining the legislative intent the statute should be read as a whole and each provision construed in connection with the others, nevertheless, in the absence of language clear and positive, we may not hold the Legislature intended to authorize so drastic a change. We, therefore, conclude, assuming the Legislature had the power, it has not so exercised it to enable two-thirds of the stockholders of the Queens Company to amend its charter so as to make its non-callable preferred stock callable.

Again, assuming the authority to make the proposed change is implicit in the statute, we believe its exercise would contravene the provisions of the Federal Constitution. Under the State Constitution (Art. VIII, § 1) and the statute (General Corporation Law, § 5), the right to alter or repeal the charter of a corporation is reserved to the Legislature. It is well settled that any change or alteration the Legislature might make by direct act may be made by delegating to the corporation, or a majority or some other percentage of its stockholders, the power to do so. The history of the reserved power is generally understood. Suffice it to say it was necessary, in view of the holding in the noted case of *Dartmouth College* v. *Woodward* (4 Wheat. 518), that a corporate charter was a contract which the State by legislative enactment was forbidden to change. It was there said, and frequently has been reiterated, that a charter is in the nature of a threefold contract: (a) between the State and the corporation, or, more accurately speaking, the incorporators; (b) the corporation and its stockholders; and (c) the stockholders themselves.

Whether an amendment to a charter is within or without the scope of the reserved power is difficult to determine. It is impossible to reconcile the decided cases dealing with the problem. It has been said: ". Special circumstances relating to corporate needs, expediency, the plaintiff appearing as a professional obstructionist, a dominant public interest, all have played a part in creating a seemingly hopeless confusion of the law." (*Yoakam* v. *Providence Biltmore Hotel Co.*, 34 F. [2d] 533, 546.) It is safe to say, however, that as long as the amendment merely protects the rights of the public or the corporation, its stockholders or creditors, or regulates and controls the internal management of the corporation so far as it has relation to the State, or promotes the administration of the

corporation's affairs or concerns the policy of the State, it is a valid exercise of the reserved power. (*Looker* v. *Maynard,* 179 U. S. 46; *Hinckley* v. *Schwarzschild & S. Co.,* 107 App. Div. 470, and cases cited.) The Court of Appeals, in defining what amendments the Legislature under its reserved power may make, said it may amend any charter " in any respect that is not fundamental when the object of the corporation and property acquired by it are considered. * * * It can regulate investments, methods of administration and details of procedure in the interest of the public and of all concerned." (*Lord* v. *Equitable Life Assur. Society,* 194 N. Y. 212, 237; *Matter of Mount Sinai Hospital,* 250 id. 103.)

The following have been held to be a valid exercise of the reserved power: An amendment which authorized the mutualization of a stock insurance company by the enfranchisement of all policyholders (*Lord* v. *Equitable Life Assur. Society, supra*); or authorized cumulative voting (*Looker* v. *Maynard, supra*); or changed the stockholders' voting rights (*Miller* v. *State,* 15 Wall. 478); or authorized a majority of the stockholders to assess holders of full-paid stock (*Somerville* v. *St. Louis Mining & Milling Co.,* 46 Mont. 268; 127 P. 464); or authorized the issuance of preferred stock upon obtaining the consent of two-thirds of all the stockholders (*Hinckley* v. *Schwarzschild & S. Co., supra*); or authorized the conversion of par value stock into stock of no par value (*Randle* v. *Winona Coal Co.,* 206 Ala. 254; 89 So. 790); or authorized the majority of the stockholders of all classes of the corporation to withdraw the right to retire the class A stock and, after certain dividends had been paid on class A and class B stocks, to abolish class B's superior interest in the sharing of further dividends by equalizing the stock of both classes (*Davis* v. *Louisville Gas & Electric Co.,* 16 Del. Ch. 157; 142 A. 654).

However, this reserved power is not unlimited, and its exercise is subject to the restrictions and restraints imposed by the other provisions of the State and Federal Constitutions. Due process of law must be observed, and vested property rights and the obligations of contracts must not be destroyed or impaired. (*Coombes* v. *Getz,* 285 U. S. 434; *Phillips Petroleum Co.* v. *Jenkins,* 297 id. 629.) While the limitations on the amending power cannot be reduced to fixed rules, the following cases illustrate what amendments constitute an improper exercise of the reserved power:

In *Lord* v. *Equitable Life Assur. Society (supra)* it was held that an amendment which deprived the stockholders of the right to vote for all the directors, although it gave them absolute power to elect twenty-four out of the fifty-two, was invalid. The court said the right of a stockholder to vote is a vested right of property which

the Legislature could not by direct action essentially impair; nor could it do so indirectly by authorizing the directors, with the consent of only a majority of the stockholders, to amend the charter so as to have that effect.

In *Stokes* v. *Continental Trust Co.* (186 N. Y. 285) it was held that a stockholder has an inherent right to a proportionate share of new stock issued by the corporation, and while he can waive that right, a majority of the stockholders, as part of their power to increase the stock, cannot deprive him of it without his consent except when the stock is issued at a fixed price not less than par and he is given the right to take at that price in proportion to his holding. To the same effect is *Dunlay* v. *Avenue M Garage & R. Co.* (253 N. Y. 274, 278).

In *Page* v. *American & British Manufacturing Co.* (129 App. Div. 346) eighty per cent of the stock of the corporation was common stock and twenty per cent preferred stock, and both had equal voting powers. Plaintiff was the owner of 1,000 shares of common stock. The corporation attempted to reduce the common stock and thereby reduce his voting power and voice in the management of the affairs of the corporation. The court held the right of a stockholder to a voice in the management of a corporation in which he has invested money is a property right and vested interest entitled to protection under the Constitution. In *Yoakam* v. *Providence Biltmore Hotel Co.* (*supra*) the corporation had first and second cumulative preferred stock and no par common stock. The certificate of incorporation provided for the maintenance of a sinking fund for the redemption of the first preferred stock, part of which was owned by plaintiff. The corporation attempted to effect a plan of reorganization, embodied in several amendments to its charter, one of which eliminated the sinking fund obligation. It was held the agreement to continue the sinking fund was a contract between the corporation and its first preferred stockholders, and the reservation on the part of the State of a right to enact future amendments to the Corporation Law did not authorize the cancellation of the contract, and the amendment was invalid.

In *Sutton* v. *Globe Knitting Works* (276 Mich. 200; 267 N. W. 815) the corporation attempted to defer the date for the redemption of its preferred stock. The court held plaintiff's right to redeem his stock on the named date was a contract, and to permit the corporation to postpone the redemption date would impair plaintiff's contract right and deprive him of his property without due process of law. To the same effect is *Vanden Bosch* v. *Michigan Trust Co.* (35 F. [2d] 643).

In *Garey* v. *St. Joe Mining Co.* (32 Utah, 497; 91 P. 369) the court decided that a statute authorizing the majority of the stockholders, against the consent of the minority, to amend the charter so as to make non-assessable full-paid stock assessable and subject to sale for such assessment, affects the contractual relations between the corporation and the stockholder, and as such impairs the obligation of a contract within the prohibition of the Federal Constitution.

In *Keller* v. *Wilson & Co., Inc.* (decided by the Supreme Court of Delaware, November, 1936, and not yet reported), the question was whether the State may authorize a corporation, created by it at a time when the law as then existing did not permit the abrogation of accrued dividends on cumulative preferred stock, to abolish such dividends by virtue of a statute passed after the creation of the corporation and the issuance of the stock. It was held the amendment to the charter, in so far as it assumed to destroy the stockholder's vested right to dividends which had accrued up to the time of the amendment, was void.

In *Coombes* v. *Getz* (*supra*) the Constitution of California provided the directors of a corporation were liable to creditors for moneys embezzled by corporate officers, and it also reserved power in the Legislature to alter or repeal existing or future laws concerning corporations. While creditors of the corporation were suing to recover moneys misappropriated by the corporation's officers, the provision making the directors liable was repealed. The court concluded the right to enforce liability was part of the creditors' contracts, perfected and vested before the repeal, and was protected by the contract clause of the Constitution and the due process clause of the Fourteenth Amendment. (Other illustrations of the extension of and limitations upon the reserved power are to be found in 75 University of Pennsylvania Law Review, 725; 43 Harvard Law Review, 656; 29 Columbia Law Review, 88; and 14 Cornell Law Quarterly, 85.) No case has been cited and none has been found holding that an amendment which converts non-callable into callable stock is valid.

While it does not appear in the record, it is undisputed that the Queens Company was incorporated and the preferred stock issued prior (although plaintiff acquired her shares subsequently) to the enactment of the statute which defendants invoke. What is the nature and character of plaintiff's interest as the present holder of non-callable preferred stock? Is it a vested interest which may not be divested without plaintiff's assent, or a defeasible interest subject to extinguishment by the holders of record of two-thirds of the outstanding shares? We believe it is a vested property

right inherent in her ownership, by virtue of which she received a fixed right in the division of the profits and earnings of the Queens Company "so long as it exists, and of its effects when it is dissolved." It has been said that such a right "is as inviolable as is any right in property, and can no more be taken away or lessened against the will of the owner than can any other right." (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 179, 180.)

If a stockholder may not be deprived of his right to vote for all the directors or of his right to subscribe for new stock, or of his right to payment on the named redemption date, or may not be denied his right to a voice in the management of a corporation or to the continuance of a sinking fund set up for the payment of his stock, and if a majority may not make his non-assessable stock assessable — because to do any of these acts would result in impairing his contract with the corporation or taking his property without due process of law, or both — surely his right to remain a stockholder as long as the company exists is entitled to equal protection and for the same reasons. Obviously the proposed amendment is not designed to protect any rights of the public, nor does it concern the policy of the State, nor does it regulate or control the internal management of the corporation as far as it has relation to the State.

The complaint alleges the Edison Company owns ninety-eight per cent of the common and approximately seventy-six per cent of the preferred stock of the Queens Company, and the individual defendants, constituting the entire board of directors of the Queens Company, are the representatives of the Edison Company and six of them are trustees of the latter. It is also alleged the proposed amendment does not reflect the honest and unbiased judgment of the individual defendants and is sponsored by them not in the interest of the Queens Company and all its stockholders, but in the interest of the Edison Company, with which they desire to merge the Queens Company. The merger cannot be effectuated under the present stock ownership as long as plaintiff and the other minority stockholders withhold their consent, because the Edison Company owns less than ninety-five per cent of the preferred stock. (Stock Corp. Law, § 85.) It is further alleged the Edison Company and the individual defendants have conspired to bring about the merger by first adopting the proposed amendment and then retiring the preferred stock. Of course, the Edison Company is within its rights in merging with the Queens Company provided it meets the statutory requirements; and with the contemplated merger we have nothing to do. But accepting, as we must, the allegations of the complaint as true, when the amendment is adopted and the

new stock issued it is the purpose of defendants to call it, thereby forcing plaintiff and the other minority stockholders out of the corporation by paying them $105 a share, which is less than its actual value. Generally, when it is proposed to exchange new stock for old, a dissenting stockholder has the right to accept the new stock and remain a stockholder or retire and receive the value of his stock. Plaintiff has no such choice. She must get out of the corporation. The majority has so decreed. The statute does not vest the majority with any such power. To hold it does is to hold the majority enjoys a right tantamount to the sovereign right of eminent domain. Defendants are attempting, under the guise of classification or reclassification of the preferred stock, to impair the obligation of plaintiff's contract with the corporation and to divest plaintiff of her present vested and permanent interest in the corporation. This we hold the statute does not authorize, and if it does it is unconstitutional. We are not impressed with defendants' argument that plaintiff's alleged grievance is that she will be compelled to part with her stock for an inadequate consideration. Plaintiff complains because defendants seek unlawfully to deprive her of stock which she desires to retain. The claimed inadequate consideration is not the wrong alleged, but only an aggravation of the wrong.

Even if the proposed amendment be authorized by the statute and declared to be a valid exercise of the reserved power, it is at least doubtful, if the allegations of the complaint be true, that she will be denied relief. There is eminent authority to the effect that all changes in corporate charters made under the reserved power must be reasonable, and not arbitrary, and made in good faith. (*Shields* v. *Ohio*, 95 U. S. 319; *Phillips Petroleum Co.* v. *Jenkins, supra.* See, also, *Gamble* v. *Queens County Water Co.*, 123 N. Y. 91, and *Matter of Mount Sinai Hospital, supra.*)

The learned Special Term, in dismissing the complaint, relied on *Matter of Silberkraus* (250 N. Y. 242) and said that the court there " inferentially decided " that an amendment such as the one involved in the instant case was authorized by section 36, and held that the remedy of appraisal provided by subdivision 12 of section 38 was available to plaintiff. In the case cited both preferred stocks were permanent. By an amended certificate the preferred shares were retired and callable stock issued. This was only one change in a comprehensive plan to revise the whole capital set-up. The petitioners raised no objection to this procedure, taken under section 36. They voted against the plan as a whole and asserted their preferential rights as owners of the second preferred stock were altered and, therefore, they entitled to an appraisal. The only question

presented was whether their preferential rights were altered. This is clear from both the prevailing and dissenting opinions. The court said the result of the alteration — that is, of all the changes — was not entirely clear. In some aspects it may be beneficial and in others detrimental to the stockholder, and under such circumstances it was for him to decide whether he shall avail himself of the opportunity to acquire the new stock, which he deems of lesser worth, or whether he shall take the appraised value. Whether, under section 36, non-callable stock may be converted into callable stock was neither considered nor determined. In fact, as pointed out by Judge HUBBS, who wrote for the minority, petitioners by instituting the proceeding necessarily conceded the legality of the amendments and of the procedure adopted. Moreover, the learned judge did not say that an amendment which changed non-callable stock into callable stock was valid. He merely said petitioners had no " preferential right to have their certificates of stock remain unaltered or to be non-callable. Such right, if it existed, was a common right which all stockholders had."

The remedy of appraisal under section 38, which the learned Special Term said was available to plaintiff, applies only if the amendment alters the preferential rights of outstanding shares. As heretofore indicated, the proposed amendment does not alter any preferential right running with the shares but destroys a vested property right. Defendants admit the remedy of appraisal is not an adequate or even an available remedy if the proposed change is not authorized.

The order denying plaintiff's motions for an injunction *pendente lite* and granting defendants' motion to dismiss the complaint, and judgment entered thereon, should be reversed on the law, with ten dollars costs and disbursements, and plaintiff's motions granted and defendants' motion denied, with ten dollars costs, with leave to defendants to answer within ten days from the entry of the order hereon.

LAZANSKY, P. J., CARSWELL and DAVIS, JJ., concur; HAGARTY, J., not voting.

Order denying plaintiff's motions for an injunction *pendente lite* and granting defendants' motion to dismiss the complaint, and judgment entered thereon, reversed on the law, with ten dollars costs and disbursements, and plaintiff's motions granted and defendants' motion denied, with ten dollars costs, with leave to defendants to answer within ten days from the entry of the order hereon.