122 S.E.2d 436 (1961)
Sol DIAMOND et al.
v.
PARKERSBURG-AETNA CORPORATION et al.
No. 12086.
Supreme Court of Appeals of West Virginia.
Submitted February 28, 1961.
Decided July 3, 1961.
Dissenting Opinion October 23, 1961.
*438 Steptoe & Johnson, James M. Guiher, Clarksburg, Thomas W. Bayley, Parkersburg, for appellants.
Geo. W. Hill, Jr., Wm. Bruce Hoff, Daniel A. Ruley, Jr., Parkersburg, for appellees.
Arch M. Cantrall, Rupert Sinsel, Clarksburg, Clarence E. Martin, Jr., Martinsburg, George Richardson, Jr., Bluefield, Charles C. Wise, Jr., William M. Woodroe, Charleston, amici curiae.
HAYMOND, President.
In this suit in equity, involving a controversy over corporate control between management and certain stockholders, instituted in the Circuit Court of Wood County on April 1, 1960, the plaintiffs, Sol Diamond, Diamond Boning Corporation, Louis Idelstein, Harold Konner, Rennick, Inc., H & M Holding Corporation, Konner Auto Sales, Inc., Benjamin Yanowsky, George Weinstein, Jack Gorham, and Irving Sklow, who constitute a minority group of common stockholders of Parkersburg-Aetna Corporation and who own no preferred stock but claim to own 104,743 shares of common stock of a total of 749,444 shares of common stock of Parkersburg-Aetna Corporation issued and outstanding, sought injunctive relief to prevent the principal defendants, Parkersburg-Aetna Corporation, a West Virginia corporation, Bernard P. McDonough, individually and as president and member of its board of directors, and Harold N. Wilson, its secretary-treasurer, and other defendants as members of the board of directors and stockholders of that corporation, from proceeding further with the annual meeting of the stockholders scheduled for April 15, 1960, than to adjourn or recess such meeting until such time as the right of the plaintiffs should be accorded them to examine the books and records of the corporation; from electing directors of the corporation at such annual meeting; and from decreasing or diminishing the membership of the board of directors; and particularly from reducing the number of directors from eight to three; and to require the defendants to permit all *439 the stockholders to vote for the election of all the directors to be voted for and elected at the annual meeting of the corporation.
Upon the verified bill of complaint and its exhibits and a notice to the principal defendants of the application of the plaintiffs for an injunction against the defendants, filed April 5, 1960, the circuit court granted the plaintiffs injunctive relief substantially as prayed for in their bill of complaint. In a written opinion filed April 6, 1960, the circuit court held that section 7 of the charter of Parkersburg-Aetna Corporation, which provided that the holders of its preferred stock as a class should have the right to elect one member of the board of directors and that the holders of the common stock as another class should have the right to elect the remaining members of the board, was violative of Article XI, Section 4 of the Constitution of this State, as amended in 1958, and that the provisions of its charter and by-laws which authorized the board of directors to increase or diminish the number of directors were also unconstitutional and void for the reason that they operated to permit the election of directors in a manner other than that provided by the foregoing article and section of the Constitution.
At May Rules 1960 the principal defendants, herein sometimes referred to as the defendants, filed their written demurrer to the bill of complaint and their written motion to dissolve the injunction insofar as it prevented the board of directors from changing the number of its members which it had done by reducing the number from eight to three on February 16, 1960, and insofar as it required the defendants to permit all the stockholders to vote at the annual meeting of the corporation for the election of all directors to be elected at such meeting.
On June 3, 1960, the principal defendants filed their joint and separate answer and its exhibits, in which they denied the unconstitutionality and asserted the constitutionality of section 7 of the charter of Parkersburg-Aetna Corporation and denied the invalidity and asserted the validity of the provisions of the charter and by-laws which authorize the board of directors to increase or diminish the membership of the board and asserted the validity of the action of the board of directors in reducing its number from eight to three on February 16, 1960. By the cross-bill portion of their answer the principal defendants prayed for affirmative relief with respect to the validity of section 7 of the charter and the provisions of the by-laws permitting increase or reduction in the membership of the board, and for a mandatory injunction to require the plaintiffs to make certain corrections in a progress report prepared and sent to the stockholders of the corporation by the plaintiffs on May 23, 1960, which informed the stockholders of and enumerated the advantages which enured to them from the rulings of the circuit court upon the questions involved and the injunctive relief granted by its decree of April 7, 1960, in the campaign by the plaintiffs to restore corporate control to all the stockholders of the Parkersburg-Aetna Corporation.
On June 30, 1960, the plaintiffs filed their written demurrer and their special replication to the answer of the defendants; and on July 13, 1960, moved the court to dismiss the bill of complaint, without prejudice, and to dissolve the injunction granted by the decree of April 7, 1960, with the reservation that the plaintiffs did not abandon their position with respect to the legal propositions and contentions involved and without waiving any benefit accruing to them by reason of the written opinion of the court of April 6, 1960, and that the court enter an order to require the 1960 annual meeting of the stockholders to be held as soon as possible.
On July 25, 1960, the defendants filed their motion for the injunctive relief prayed for in the answer filed by them on June 3, 1960. On August 17, 1960, the court granted the motion of the principal defendants to amend their answer to show that the total number of shares of preferred *440 stock of the corporation then outstanding was 4,431 and that the defendant Bernard P. McDonough then owned 1,849 shares of such preferred stock; and the principal defendants filed their reply to the special replication of the plaintiffs.
The circuit court filed its written opinion on August 23, 1960, and by final decree entered September 7, 1960, denied the motion of the plaintiffs to require the 1960 annual meeting of the stockholders of Parkersburg-Aetna Corporation to be held as requested in such motion, dissolved the injunction granted by the decree of April 7, 1960, dismissed the bill of complaint of the plaintiffs, denied the injunctive relief prayed for by the defendants in their answer and, treating the portion of the answer of the defendants seeking affirmative relief as an application for relief by declaratory judgment, held that the provisions of the charter of the defendant Parkersburg-Aetna Corporation which granted preferred stockholders as a class the exclusive right to elect one director and denied them the right to vote for all directors and which granted common stockholders as a class the exclusive right to elect all directors other than the one to be elected by the preferred stockholders and which denied them the right to vote for all directors, were unconstitutional and void under the provisions of Article XI, Section 4 of the Constitution and the 1958 Amendment to that article and section.
From the foregoing final decree this Court granted this appeal and supersedeas upon the application of the defendants Parkersburg-Aetna Corporation, Bernard P. McDonough and Harold N. Wilson.
The vital and controlling question for determination on this appeal is whether the 1958 Amendment to Article XI, Section 4 of the Constitution of this State effected a change in the provisions of that article and section so as to enable the Legislature to empower every corporation other than banking institutions to grant preferred stockholders, as a class, the exclusive right to elect one director and to grant to common stockholders, as a class, the exclusive right to elect all other directors as provided by section 7 of the charter of the defendant Parkersburg-Aetna Corporation and whether that charter provision is constitutional and valid. If the decision of that question is in the affirmative it is necessary also to determine the additional questions (1) whether the provisions of the 1958 Amendment and of the enabling statute, based on that amendment, and being Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, which reenacted the identical provisions of Sections 22 and 66, Article 1, Chapter 31, Code, 1931, apply to charters of such corporations in existence at the time the amendment was ratified or must be given only prospective operation and effect; and (2) whether the action of the board of directors of any such corporation, under provisions of its by-laws, in increasing or diminishing the number of the members of its board of directors is valid.
The material facts disclosed by the pleadings are not conflicting and the questions presented for decision are questions of law.
The historical background of Article XI, Section 4 of the present Constitution of 1872 in its original form and of the various statutes relating to the voting rights of corporate stockholders which culminated in the enactment of Sections 22 and 66, Article 1, Chapter 31, Code, 1931, is set forth in the majority opinion and in the dissenting opinion in State ex rel. Dewey Portland Cement Company v. O'Brien, 142 W.Va. 451, 96 S.E.2d 171, in which this Court held that Sections 22 and 66, Article 1, Chapter 31, Code, 1931, to the extent that they undertook to authorize the issuance of shares of stock which limited or denied the right of their owners to vote in the election of directors or managers of an incorporated company were invalid as violative of the provisions of Article XI, Section 4 of the Constitution of this State. The practical result of that decision was to *441 invalidate the charter provisions of a large number of domestic corporations which had for many years attempted to authorize the issuance, and had issued, shares of stock with limited or no voting rights in their owners, and whose power to do so, under the provisions of their charters, had not been questioned or challenged until the institution of the Dewey Portland Cement Company case. The impact of the decision in that case upon the vast number of corporations created and organized under the laws of this State and the widely recognized desire to authorize the issuance of various classes of stock with limited or no voting rights in their owners in the election of the directors or managers of such corporations caused the Legislature to submit and the people to ratify the 1958 Amendment to the original Article XI, Section 4 of the Constitution. To accomplish that result was the sole and manifest purpose of the Legislature in submitting and of the people of this State in ratifying that amendment to the Constitution.
The 1958 Amendment is expressed in this language: "The Legislature shall provide by law that every corporation, other than a banking institution, shall have power to issue one or more classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications, and that in all elections for directors or managers of incorporated companies, every stockholder holding stock having the right to vote for directors, shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner."
Comparison of the language of the amendment with that of the original constitutional provision shows that the amendment contains the additional provisions that "every corporation, other than a banking institution, shall have power to issue one or more classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications," and that in all elections for directors or managers of incorporated companies, every stockholder "holding stock having the right to vote for directors," shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate such shares. Except the additional quoted provisions, the amendment contains the same language as that of the original provision of the Constitution.
The first part of the amendment relates to the power of "every corporation," other than a banking institution, to issue one or more classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications. The second part of the amendment relates to the manner in which a stockholder "holding stock having the right to vote for directors," shall exercise that right. The circuit court in considering the provisions of both parts of the amendment found that they were in irreconcilable conflict and that by reason of such conflict the amendment did not operate to change the meaning and effect of, or supersede, the original constitutional provision which invalidated the restriction or the denial of the right of any stockholder of such corporation to vote for the election of all its directors and managers. According to the circuit court the provisions of the amendment approved and affirmed the decisions of this Court in State ex rel. Dewey Portland Cement Company v. O'Brien, 142 W.Va. 451, 96 S.E.2d 171, *442 and State ex rel. Syphers v. McCune, 143 W.Va. 315, 101 S.E.2d 834, "in more ways than it overruled them." The meaning and effect of the amendment, as determined by the circuit court, would operate to nullify and defeat the very purpose sought to be accomplished by its ratification by the people. With this conclusion this Court does not agree. It is clear that it was the intention of the framers of the amendment and of the people who ratified it that it should change, amend and supersede, at least to the extent of its new and added provisions, the original constitutional provision, and that the new and added provisions should be given their intended meaning and effect. This it is the solemn duty of this Court to do. Berry v. Fox, 114 W.Va. 513, 172 S.E. 896. In that case this Court held in point 3 of the syllabus that a constitutional amendment, as the last word from the people on a subject under consideration, should be given controlling effect where there is irreconcilable conflict between it and other constitutional provisions.
The provisions of Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, based on the 1958 Amendment, are identical with the provisions of Sections 22 and 66, Article 1, Chapter 31, Code, 1931, and to the extent here pertinent are:
Section 22"Every corporation, other than a banking institution, shall have power to issue one or more classes of stock or one or more series of stock within any class thereof, any or all of which classes may be of stock with par value or stock without par value, with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the charter, or in any amendment thereto, or in the resolution or resolutions providing for the issue of such stock adopted by the board of directors pursuant to authority expressly vested in it by the provisions of the charter or of any amendment thereto."
Section 66"In all elections of directors of corporations each stockholder shall have the right to cast one vote for each share of stock owned by him and entitled to a vote, and he may cast the same in person or by proxy, for as many persons as there are directors to be elected, or he may cumulate such votes and give one candidate as many votes as the number of directors to be elected multiplied by the number of his shares of stock shall equal; or he may distribute them on the same principle among as many candidates and in such manner as he shall desire, and the directors shall not be elected in any other manner; and on any other question to be determined by a vote of shares at any meeting of stockholders each stockholder shall be entitled to one vote for each share of stock owned by him and entitled to a vote, and he may exercise this right in person or by proxy."
Though there is no irreconcilable conflict in or between the different provisions of the amendment, its provisions are not entirely clear and unambiguous and for that reason they are subject to interpretation by the court according to the well recognized rules of construction applicable to all types of written instruments.
In State v. Harden, 62 W.Va. 313, 58 S.E. 715, 60 S.E. 394, in considering the meaning and the effect of two separate constitutional provisions, this Court held in point 3 of the syllabus that "In ascertaining the intention of the people in adopting a constitution all parts of the constitution must be considered, every article, section, clause, phrase and word allowed some effect, and all parts, clauses, phrases and words harmonized, if possible. No part or word in it can be ignored, disregarded, treated as meaningless or denied purpose and effect, unless there be irreconcilable contradiction and repugnancy." In the opinion in that case this Court said: "A Constitution, for the most part, may be construed *443 as a great compact or agreement, entered into by all the people of the State, for and on behalf of themselves and those who shall come after them, until such time as it is abolished, changed or modified. An elementary rule of construction, applicable to every kind of written instruments, is that all parts of the instrument under consideration shall be considered, and every portion, paragraph, clause and word given effect, if it be susceptible of such construction, and, whether it be so susceptible or not, all of its parts must be considered, and no court is warranted in expunging or declaring meaningless or ineffective any word, phrase or clause, except in the case of irreconcilable conflict and repugnance." The opinion also contains this pertinent language: "Courts are bound, in construing a constitution, statute or other instrument, to presume that the authors of the instrument had some purpose in inserting every clause found in it, and every word of the clause, and intended it to have some effect."
In Flesher v. Board of Review, West Virginia Department of Veterans' Affairs, 138 W.Va. 765, 77 S.E.2d 890, this Court said that "An elementary rule of construction is that, if possible, effect should be given to every part and to every word of a constitutional provision and that, unless there is some clear reason to the contrary, no part of the fundamental law should be regarded as superfluous." See also State v. Kyle, 8 W.Va. 711; List v. City of Wheeling, 7 W.Va. 501; Marbury v. Madison, 1 Cranch (U.S.) 137, 2 L.Ed. 60; Myers v. United States, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160; State ex rel. Walker v. Bus, 135 Mo. 325, 36 S.W. 636, 33 L.R.A. 616; Lamar Water and Electric Light Company v. City of Lamar, 128 Mo. 188, 26 S.W. 1025, 31 S.W. 756, 32 L.R.A. 157. The opinion in the Flesher case also contains this quotation from 11 Am.Jur., Constitutional Law, Section 61: "The fundamental principle of constitutional construction is to give effect to the intent of the framers of the organic law and of the people adopting it. A constitutional clause must be construed reasonably to carry out the intention of the framers, which gives rise to the corollary that it should not be construed so as to defeat the obvious intent if another construction equally in accordance with the words and sense may be adopted which will enforce and carry out the intent. The intent must be gathered from both the letter and spirit of the document."
In State ex rel. Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122, the opinion contains this quotation from Bronson v. Syverson, 88 Wash. 264, 152 P. 1039, L.R.A.1916B, 993, Ann.Cas.1917D, 833: "It is a cardinal rule of construction that the language of a State Constitution, more than that of any other of the written laws, is to be taken in its general and ordinary sense.", and this quotation from Volume 1, Carrington Cooley's Constitutional Limitations, 8th edition, 124: "The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it." See also May v. Topping, 65 W.Va. 656, 64 S.E. 848; Chesapeake and Ohio Railway Company v. Miller, 19 W.Va. 408, affirmed 114 U.S. 176, 5 S.Ct. 813, 29 L.Ed. 121; Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23.
In State v. General Daniel Morgan Post No. 548, 144 W.Va. 137, 107 S.E.2d 353, in considering rules of statutory construction which, of course, apply as well to constitutional provisions, this Court said that "a cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." See also Building and Loan Association v. Sohn, 54 W.Va. 101, 46 S.E. 222; Bank of Bramwell v. County Court of Mercer County, 36 W.Va. 341, 15 S.E. 78.
Applying the foregoing well recognized rules of constitutional and statutory construction and giving effect to the added provisions of the 1958 Amendment to the Constitution of this State that "every corporation, other than a banking institution, shall have power to issue one or more *444 classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications" and the phrase relating to a stockholder "holding stock having the right to vote for directors", it is clear that these and the other provisions of the amendment are intended to mean that every corporation, other than a banking institution, shall have the power to issue one or more classes and series within classes of stock, with or without par value, with full, limited or no voting powers, and with preferences and special rights and qualifications; that a stockholder holding stock which gives him full voting powers shall have the right to vote for the number of shares of stock owned by him for as many persons as there are directors or managers to be elected, or to cumulate his shares; that a stockholder holding stock which gives him the limited right to vote for more than one director or manager but for less than the total number of directors or managers to be elected shall have the right to vote for that number of directors or managers to be elected, or to cumulate his shares; that a stockholder holding stock which gives him no voting powers can not vote for any directors or managers to be elected and can not cumulate his shares; and that a stockholder holding stock which gives him the right to vote for only one director or manager can vote for only one of the directors or managers to be elected and can not cumulate his shares for the reason that his vote for one director or manager can not be cumulated. This interpretation of the provisions of the amendment does not deprive any stockholder holding stock having the right to vote for more than one director or manager from cumulating his shares but simply means that a stockholder holding stock which does not give him any voting power or which gives him the right to vote for only one director or manager can not cumulate his shares because unless his stock gives him the right to vote for more than one director or manager his shares in the nature of things can not be cumulated. So to interpret the amendment does not deprive any stockholder of any of his voting rights for the reason that he has only such voting rights as the kind or class of stock purchased by and issued to him gives him under the charter provisions of the corporation, and he accepts the stock with knowledge of and subject to such terms and limitations. No person is required to purchase stock of any kind in any corporation and when he does so voluntarily he accepts the stock subject to the limitation imposed relating to the powers conferred with respect to the election of directors or managers of the corporation.
Under the 1958 Amendment to the Constitution of this State and Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, which are based on that amendment and are in harmony with it and for that reason are constitutional and valid, the provisions of section 7 of the charter of the defendant Parkersburg-Aetna Corporation, that the holders of its preferred stock shall have the right, as a class, to elect at least one member of its board of directors and that the holders of its common stock and of its other stock with the same voting rights as the common stock shall have the right, as another class, to elect the remaining members of such board, are constitutional and valid and apply and are operative from and after the ratification of the amendment and the effective date of the statute. This holding is not contrary to the decision of this Court in State ex rel. Syphers v. McCune, 143 W. Va. 315, 101 S.E.2d 834, concerning the right of a stockholder of a corporation to cumulate his shares in voting for directors or managers of the corporation. That case was decided under Article XI, Section 4 of the Constitution and before the ratification of the 1958 Amendment and determined the effect of the terms of the original constitutional provision relating to cumulative voting. For that reason the Syphers case is distinguishable from and does not control the decision in the case at bar on the question whether stockholders holding shares of stock with limited or no voting powers under *445 the provisions of the 1958 Amendment may cumulate such shares in the election of directors or managers of the corporation.
As previously indicated, the effect of the ratification of the 1958 Amendment and of the enactment of Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, was to validate the provisions of the existing charters of corporations created and organized under the laws of this State which authorized the issuance of classes of stock with full, limited or no voting powers, and to give such charter provisions operative effect from and after the ratification of the amendment and the effective date of the statute. Those constitutional and statutory provisions, however, do not operate retrospectively and, of course, do not render such charter provisions valid or their operation effective before the ratification of the amendment or the enactment of the statute; and until that time such charter provisions were of no force or effect.
By the terms of the amendment the legislation which it directs the Legislature to enact applies to "every corporation" and includes corporations then in existence and corporations subsequently created and organized. To give the words "every corporation" any other meaning or effect would disregard and nullify those words of the amendment and would give recognition to two classes of corporations which would operate under and be subject to two sets of laws, a situation which this Court refused to recognize and sanction in Germer v. Triple-State Natural Gas and Oil Company, 60 W. Va. 143, 54 S.E. 509. In that case this Court held in point 3 of the syllabus that the provisions of a statute apply alike to all corporations subject to the statutes of this State whether incorporated prior or subsequent to the passage of such statute. To the same effect are the cases of Cross v. West Virginia Central and Pittsburg Railway Company, 35 W.Va. 174, 12 S.E. 1071, and Lamb v. Strother, 118 W.Va. 257, 189 S.E. 865. In the Lamb case this Court held in point 1 of the syllabus that statutes prescribing the method of enforcing the constitutional double liability of stockholders in banks may be applied to enforce such liability against stockholders who purchased their stock prior to the enactment of such statutes without impairing the obligation of their contracts for the purchase of such stock. Moreover by Section 8, Article 1, Chapter 31, Code, 1931, the right of the Legislature to alter any charter or certificate which may be granted and to alter or repeal any law applicable to such corporation is expressly reserved. Under substantially the same earlier statutes this Court has held that such provisions of the statute constituted a part of the charter of the corporation as fully as if the right of amendment were contained in the charter. State v. St. Mary's Franco-American Petroleum Company, 58 W.Va. 108, 51 S.E. 865, 112 Am.St.Rep. 951, 1 L.R.A.,N.S., 558, 6 Ann.Cas. 38; Cross v. West Virginia Central and Pittsburg Railway Company, 35 W.Va. 174, 12 S.E. 1071.
In Germer v. Triple-State Natural Gas and Oil Company, 60 W.Va. 143, 54 S.E. 509, in discussing the amendment to the charter of a corporation by a statute enacted after the formation of the corporation this Court said: "When the Triple-State stock was subscribed for by the stockholders they did so charged with a full knowledge of the statutory provisions then existing under which the legislature might, at any time, alter, amend or repeal the provisions of the law which were made a part of the charter. The powers reserved to the legislature are plain and distinct and any amendment or alteration made subsequent to the formation of the corporation and made within the scope of the reserved powers were written into the charter as certainly as the restrictions and rights and powers of the stockholders and the corporation itself existing at the time of the incorporation. It is contended by appellants that section 83 added to chapter 54, and the amendment to section 3 of chapter 52 being enacted subsequent to the organization of the Triple-State Company *446 said corporation and the stockholders thereof are not subject to the provisions thereof; in other words, corporations, existing prior to the enactment of chapter 35, Acts of 1901, are not affected by it, or subject to its provisions. If this proposition were correct we should have two classes of corporations operating and subject to two sets of laws. This question seems to be well settled in the case of Cross v. Railway Company, 35 W.Va. 174 [12 S.E. 1071]." The opinion in the Germer case also contains these statements: "The broad reservation to the legislature to `Amend, alter or repeal' the provisions of the statute under which corporations operate are as though written into every charter issued thereunder, and every subscriber to the stock of any such corporation is charged with full knowledge of the provisions of the law then existing, under which the legislature might, at any time, amend, alter or repeal the provisions of the law which were so made a part of the charter, and such subscriber must be held to have given his consent that such change might at any time be made by the legislature. This being true, it cannot be claimed, with good reason, that by such action the legislature would be impairing the obligation of any contract the subscriber entered into when he became a stockholder.4 Thomp. on Corp., section 5408. In Allen v. Ajax Mining Company [30 Mont. 490], 77 Pac. Rep. 47, decided in Montana in 1904, a case very similar to the one before us, Holloway, J., in delivering the opinion of the court, says: `It is to be understood, too, that this reservation possesses equal vigor, whether contained in the charter of the particular corporation itself, or in the Constitution or general laws of the state under which the corporation is organized. While there may be some slight conflict in the authorities, the great weight of authority clearly and unequivocally sustains such statutes. Market Street Ry. Co. v. Hellman, 109 Cal. 571, 42 Pac. 225; Looker v. Maynard, 179 U.S. 46, 21 Sup.Ct. 21, 45 L.Ed. 79, and cases cited: Northern Central Railroad Co. v. Maryland, 187 U.S. 258, 23 Sup.Ct. 62, 47 L.Ed. 167; Venner Co. v. Steel Corporation, (C.C.) 116 Fed. 1012. The theory upon which these statutes are upheld is that whatever rules or regulations for the management, operation or control of a corporation which the legislature might have incorporated in the law under which the corporation was organized may afterwards properly be engrafted on its charter by virtue of this reserved power existent at the time of the formation of the corporation. Sinking Fund Cases, 99 U.S. 700, 25 L.Ed. 496; Spring Valley Water W. v. Schottler, 110 U.S. 347, 4 Sup. Ct. 48, 28 L.Ed. 173; Market Street Ry. Co. v. Hellman, above; McGowan v. McDonald, 111 Cal. 57, 43 Pac. 418, 52 Am.St.Rep. 149; Williams v. Nall, (Ky.) [108 Ky. 21] 55 S. W. 706. A review of the authorities citing numerous instances of the enforcement of such statutes is found in 4 Thompson on Corporations, Par. 5411.'"
In Charlotte Harbor and Northern Railway Company v. Welles, 260 U.S. 8, 43 S.Ct. 3, 67 L.Ed. 100, the court said: "The general and established proposition is that, what the Legislature could have authorized, it can ratify if it can authorize at the time of ratification."
The action of the board of directors in reducing the number of members of the board from eight to three, on February 16, 1960, pursuant to the section of the by-laws of the defendant corporation which provides that "The number of directors shall be eight, (nine), but the number may, from time to time, be diminished to not less than three, or may be increased by amendment of these bylaws adopted in the manner hereinafter prescribed for amendments of these bylaws, or as provided in Section 6.03 of these bylaws.", which the circuit court, in denying the prayer of the answer of the principal defendants, considered invalid, was fully authorized by Section 16, Article 1, Chapter 31, Code 1931. That section, to the extent here pertinent, provides that "The number of directors which shall constitute the whole board shall be such as from time to time shall be fixed by, or in the manner provided in, the by-laws, but in no case shall the number be less than three." These provisions *447 of the by-laws, under which the directors of the defendant company acted in reducing the number of the members of the board to the prescribed statutory minimum of three members, are in full compliance with the provisions of the statute. The provisions of the by-laws do not violate any provision of the 1958 Amendment to Article XI, Section 4 of the Constitution or of Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, and are in all respects valid and effective; and the action of the directors pursuant to those provisions in reducing the number of directors from eight to three was likewise valid.
The final decree of the Circuit Court of Wood County is reversed and set aside and this case is remanded to that court for further proceedings in conformity with the principles enunciated in this opinion.
Reversed and remanded with directions.
BROWNING, Judge (dissenting).
I dissent. It is upon what is aptly described in the majority opinion as "the vital and controlling question for determination on this appeal", that is, "whether the 1958 Amendment to Article XI, Section 4 of the Constitution of this State effected a change in the provisions of that article and section so as to enable the Legislature to empower every corporation other than banking institutions to grant preferred stockholders, as a class, the exclusive right to elect one director and to grant to common stockholders, as a class, the exclusive right to elect all other directors as provided by section 7 of the charter of the defendant Parkersburg-Aetna Corporation and whether that charter provision is constitutional and valid.", that I strenuously disagree with the decision of the majority in this case. Believing, as I do, that the decision is erroneous upon this issue, the other points raised thereby are not reached and I will not comment thereon.
Article XI, Section 4, will be quoted in full with the language added by the 1958 amendment appearing in capital letters: "The legislature shall provide by law that EVERY CORPORATION, OTHER THAN A BANKING INSTITUTION, SHALL HAVE POWER TO ISSUE ONE OR MORE CLASSES AND SERIES WITHIN CLASSES OF STOCK, WITH OR WITHOUT PAR VALUE, WITH FULL, LIMITED OR NO VOTING POWERS, AND WITH PREFERENCES AND SPECIAL RIGHTS AND QUALIFICATIONS, AND THAT in all elections for directors or managers of incorporated companies, every stockholder HOLDING STOCK HAVING THE RIGHT TO VOTE FOR DIRECTORS, shall have the right to vote, in person or by proxy, for the number of shares of stock owned by him, for as many persons as there are directors or managers to be elected, or to cumulate said shares, and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock, shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors or managers shall not be elected in any other manner." With the exception of the capitalized language inserted by the 1958 amendment, there was no other change in the sentence structure, wording or punctuation, with the one minor exception of the substitution of a semicolon for a colon after the word "fit" near the end of the section.
It is clear to me that neither in the joint resolution adopted by the Legislature at its Regular Session, 1957; in Senate Bill No. 251 submitting to the vote of the people of this State the question of amending Article XI, Section 4; in the language contained on the ballot by which it was approved; nor in the words of the entire section after the amendment, is there any language to be found which may by construction, strained or otherwise, be converted into meaning what the majority has said that it does mean. Even upon the assumption, which I expressly deny, that the Legislature was empowered to grant to corporations the privilege of abolishing the right of cumulative *448 voting, guaranteed by this section of the Constitution since 1872, the Legislature did not, by the so-called enabling legislation, Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, confer upon corporations organized under the laws of this State such authority. On the contrary, by clear and unambiguous language, the Legislature, not being misled by the significance of the amendatory language of Article XI, Section 4, reaffirmed and reasserted the ancient right of "every stockholder holding stock having the right to vote for directors," to vote such shares of stock in any of the ways provided by the latter clause of this section including, of course, the right of cumulative voting, "and such directors or managers shall not be elected in any other manner". (Italics supplied.) The action of the Legislature in this regard within a few weeks after the effective date of the amendment to Article XI, Section 4, will be further commented upon hereinafter.
This Court held in State ex rel. Dewey Portland Cement Co. v. O'Brien, 142 W. Va. 451, 96 S.E.2d 171, 178, hereinafter referred to as the O'Brien case, "* * * that Article XI, Section 4, of the Constitution of the State, is clear and unambiguous, and there is no occasion to resort to the rules of construction in ascertaining its meaning." Its provisions are just as clear and unambiguous with the additional language inserted by the 1958 amendment as they were when the O'Brien case was decided in December, 1956. I cannot improve upon the language used by President Johnson in writing the opinion for the Court in Chesapeake & O. Railway Company v. Miller, Auditor, 19 W.Va. 408: "The language of the Constitution being clear and free from ambiguity, and the words used, due regard being had to their grammatical construction, embodying, as they do, a definite meaning, which involves no absurdity and no contradiction between different parts of the same instrument, the meaning apparent on the face of the instrument is the one, which alone, we are at liberty to say was intended to be conveyed, and we are not at liberty to look beyond the instrument itself. * * *"
The great respect which I have for the sagacity of the majority, engendered by many years of association and observation in the conference room of this Court, only accentuated my perplexity when they made what I believe to be their palpably erroneous decision in this case. Upon review and reflection, however, the answer seems apparentthey succumbed to that mortal enemy of logicfalse premise. Our language does not provide words which accurately describe this little gremlin that has been disrupting the mental processes of man since first he began to reason deductively. While recognizing the true premises, and rendering lip service to them in the opinion, the majority thereafter fell victim to two of these gremlins: 1) Article XI, Section 4, contains two, not one, commandments to the Legislature with regard to the election of directors by the stockholders of a West Virginia corporation, and 2) the alleged "evil" sought to be corrected by the amendment. Once the Court had accepted the false premises with regard to these two points, it was easy to reason logically therefrom and arrive at their decision. In no other way could they fail to comprehend that the new language of Article XI, Section 4, related solely to changing the provision of the section with regard to the voting power of shares of stock that were issued by a corporation chartered under the laws of this State. The amendment directed the Legislature to empower all corporations except banking institutions to issue stock with "full, limited or no voting powers,". That meant that if a corporation desired to do so it could issue stock without the power to vote for directors. But in words as clear as the English language permits, it further stated that if a corporation chose to issue stock giving its owner the right to participate in the election of directors then "every stockholder holding stock having the right to vote for directors, shall have the right to vote * * * for as many persons *449 as there are directors or managers to be elected, * * *.", and to "distribute" or "cumulate" such shares as the stockholder owned in the election of directors. The section ends with the same imperative command that has been in it since 1872: "and such directors or managers shall not be elected in any other manner." The majority opinion, with reference to the O'Brien case, states: "* * * The impact of the decision in that case upon the vast number of corporations created and organized under the laws of this State and the widely recognized desire to authorize the issuance of various classes of stock with limited or no voting rights in their owners in the election of the directors or managers of such corporations caused the Legislature to submit and the people to ratify the 1958 Amendment to the original Article XI, Section 4 of the Constitution. To accomplish that result was the sole and manifest purpose of the Legislature in submitting and of this State in ratifying that amendment to the Constitution." (Italics supplied.)
Counsel for the appellants, the losing litigants in the trial court and the winning litigants in this Court, repeatedly refer in their brief to the two parts of Article XI, Section 4. This is the title of one of the subdivisions of their brief: "The provisions of `part one' and `part two' of the 1958 amendment, when properly construed, are fully reconcilable." It would have been poor strategy for counsel to ignore, deny or refuse to admit that which was obvious. Long ago, to be exact on the 24th day of March, 1891, this Court understood that Article XI, Section 4, was composed of two parts. This statement is contained in the opinion of Cross v. West Virginia Central & Pennsylvania Railway Company, 35 W. Va. 174, 12 S.E. 1071, 1072, decided on that day: "I see no reason why this latter clause should not be construed as of its own force controlling the manner of electing directors under this charter prospectively. But if it needed legislative enactment to put this constitutional provision in force this was made in the language of the constitution by act of December 20, 1873, * * *." (Italics supplied.)
The sole issue decided by this Court in the O'Brien case as recognized in the majority opinion and the pertinent events which occurred thereafter irrefutably verify the following statement made in a brief amicus curiae filed by six eminent attorneys of this state: "Section 4 of Article XI was promptly amended in 1958 following this court's interpretation of the original 1872 version. The bar of this State was greatly concerned about the effect of the O'Brien decision on both existing and prospective corporations. The amendment of 1958 was supported by the West Virginia State Bar in appearances before the judiciary committees of both houses of the Legislature after its Board of Governors had acted favorably on the proposed amendment. In annual meeting the State Bar voted to urge its adoption by the citizens of this State. The electorate overwhelmingly approved the amendment, which was unusual for a matter so technical." The O'Brien case was an original proceeding in this Court in which Dewey Portland Cement Company sought a writ of mandamus against O'Brien, the Secretary of State, to compel him to receive an amendment to the charter of that corporation approved by more than sixty-six per cent of the holders of the outstanding common stock which provided for "dividing the common stock into two classes: (1) 1,350,000 shares of Class `A' common stock of the par value of $7.50; and (2) 650,000 shares of Class `B' common stock of the par value of $7.50, all voting rights, except in instances not here pertinent, to be vested exclusively in the holders of Class `B' common stock." The holding of this Court upon the question thus arising is succinctly stated in the first syllabus point: "Section 4, Article XI, of the Constitution of this State, provides in clear and unambiguous language that every shareholder shall have the right to vote his or her shares of stock in the election of directors or managers of an incorporated company in any manner provided for therein." The only *450 issue before this Court related to the first portion of Article XI, Section 4, of the Constitution, that is, the right of every shareholder to vote for the directors or managers of a corporation; there was no issue raised therein, and could not have been, relating to the latter portion of that section concerning the manner of voting. The O'Brien case was decided on December 22, 1956. Shortly thereafter there was introduced in the upper house of the Legislature Senate Joint Resolution No. 5, proposing an amendment to Article XI, Section 4 of the Constitution, and Senate Bill No. 251, "AN ACT to provide for the submission to the voters of the state of an amendment to the constitution of the state, amending section 4 of article eleven thereof, relating to corporate stock and the rights of stockholders of corporations to vote for directors or managers." On March 7, 1957, 85 days after the decision in the O'Brien case, Senate Bill No. 251 was passed and the question of the ratification or rejection of the amendment to Article XI, Section 4, was submitted to the voters of the State at the general election to be held on November 4, 1958; and on the last mentioned date the amendment was approved by the electorate.
State ex rel. Syphers v. McCune, 143 W. Va. 315, 101 S.E.2d 834, 838, was decided by this Court on February 10, 1958. It is significant that the decision was handed down approximately eleven months after the passage of Senate Bill No. 251 by the Legislature submitting the amendment of Article XI, Section 4, to a vote of the people at the November, 1958, election. That was an original proceeding in mandamus and briefly these were the facts: The respondents were the officers and members of the board of directors of the Co-Operative Transit Company; the by-laws of that company provided that two of the five directors should be elected in one year, two to be elected two years thereafter and one in four years thereafter; each director was to serve for a period of six years except that two of the respondents, by virtue of contracts with the corporation, were to represent the company as directors for periods of ten and fifteen years, respectively. Such procedures were, of course, held to be in violation of Article XI, Section 4, of the Constitution and this pertinent statement will be quoted from the opinion of that case: "The bylaws of the respondent corporation staggered the election of the five directors so that not more than two of the five would be elected at the same time instead of all five being then elected, and this provision of the bylaws was subject to the further claims of McCune and Carnes to be directors according to the terms of their contracts. So during the periods provided in the contracts of McCune and Carnes with the corporation, there could be only three other directorate positions to be filled, and not more than two of them at the same time. Regardless of the motives or purposes of the management of the corporation, or whether such by-law provisions have proved beneficial, it is readily observable that such limitation gives a majority of the stockholders the power to elect all directors of the corporation with no power in a lesser percentage of the votes to elect a single director, and thus deprives entirely the minority of representation on the board and a voice in the management of the affairs of the company. As stockholders have the right to vote cumulatively, a plan which prevents the full enjoyment of that right is, to that extent, an effectual and substantial denial of the right and illegal. Accordingly, we are of the opinion that the stockholders had the right to vote on all five positions of directors of the corporation, and [that] they could not be limited to the selection of any lesser number." This decision, of course, rendered invalid the last sentence of Code, 31-1-16, "The directors of any corporation organized as aforesaid may, by the charter or any amendment thereto, or by a vote of the stockholders, be divided into one, two or three classes; the term of office of those of the first class to expire at the annual meeting next ensuing; of the second class one year thereafter; of the third class two years thereafter; and at each annual election held after such classification and election, directors shall be *451 chosen for a full term, as the case may be, to succeed those whose terms expired." This is one of the sections to which the chairman of the Code Commission, whose work resulted in the official code of 1931 had reference in 40 West Virginia Law Quarterly 97, when he stated: "However, the report of the code commission carrying into the revision the provisions of the act of the legislature of 1901 was not adopted by the legislative committee or the legislature, but instead the provisions of a recent Delaware statute were bodily inserted in the West Virginia Code. If the legislature had set out with the sole object of disregarding all constitutional obligations assumed by its members and defying the provisions of the section of the constitution quoted, language more apt for the purpose than that adopted could not have been found." Whether the decision by the majority in the instant case and the construction they have placed on Article XI, Section 4, as amended, revives and breathes the breath of life back into that provision of the statute is a question upon which I do not care to speculate.
In the O'Brien case it was contended that the provision in Article XI, Section 4, to the effect that every stockholder shall have the right to vote for the number of shares of stock owned by him for as many persons as there are directors and managers to be elected really meant only that in all elections for directors each shareholder entitled to a vote should be entitled to vote in the manner provided in the latter clause of that section. It will be noted that this contention, which was rejected by the Court in that case, was incorporated into, and thus validated by, the amendment in these words: "* * * Every stockholder holding stock having the right to vote for directors, * * *". It is now contended in the instant case that such words really mean only that the shareholder has the right to vote, and this is a quotation from the brief of appellants, "for as many persons as there are directors or managers to be elected by his particular class of stock." There was some validity to the contention in the O'Brien case as to the construction which should be placed upon the language referred to above. There was a long history of legislative and administrative interpretation of the language of the first portion as contended for by counsel in that case. There was also some authority in other jurisdictions to support it. In State ex rel. Frank v. Swanger, 190 Mo. 561, 89 S.W. 872, 876, 2 L.R.A.,N.S., 121, the court, in construing a provision of the Missouri Constitution similar to Article XI, Section 4, said: "Properly understood, we think section 6, art. 12, of the Constitution means only that every stockholder entitled to vote at any corporate election is entitled to vote his share on the cumulative plan, * * *." (Italics supplied.) Although not directly in point, this significant statement is contained in the opinion of the case of E. K. Buck Retail Stores v. Harkert, 157 Neb. 867, 62 N.W.2d 288, 295, 45 A.L.R.2d 774: "It will be noted that each share of stock is given one vote, the right to cumulate was not denied and, for aught the record shows, the voting power of the stock was in no way reduced."
In his able dissenting opinion in the O'Brien case, Judge Given after citing two West Virginia cases, said: "In neither of these cases was the exact question here involved considered by the Court. The Court, however, clearly treated the constitutional provision as one relating to the manner of the exercise by stockholders of the right to vote, that is, cumulatively and distributively, and not to the limiting of powers of the Legislature." (Italics supplied.) However, in the following cases it was held, as did this Court in the O'Brien case, that the language meant exactly what it said: People ex rel. Watseka Telephone Company v. Emmerson, 302 Ill. 300, 134 N.E. 707, 21 A.L.R. 636; and Brooks v. State ex rel. Richards, 3 Boyce 1, 26 Del. 1, 79 A. 790, 51 L.R.A.,N.S., 1126. The last cited case was decided by the Supreme Court of Delaware in 1911. It is incomprehensible to me that this Court, which rejected the *452 contention made in the O'Brien case and which, as I have pointed out, had some support in prior legislative and administrative interpretation and in the case law of other states, can now, after the amendment validating such contention, embrace the words used to do so and extend them far beyond their intended purport so as to sanction the much narrower construction contended for in the instant case. It will be noted that no authority is cited in the majority opinion for denying stockholders having the right to vote for directors the privilege of voting cumulatively when such is guaranteed by a Constitution or statute in the clear and unambiguous language of Article XI, Section 4. There is an obvious reason for the absence of any such citation of authority in the majority opinion: There is none. Neither do I find in that opinion a definition of the term "cumulative voting". In Black's Law Dictionary, it is defined thus: "A system of voting, by which the elector, having a number of votes equal to the number of offices to be chosen, is allowed to concentrate the whole number of his votes upon one person, or to distribute them as he may see fit. For example, if ten directors of a corporation are to be elected, then, under this system, the voter may cast ten votes for one person, or five votes for each of two persons, et cetera. It is intended to secure representation of a minority," citing State v. Stockley, 45 Ohio St. 304, 13 N.E. 279; Bridgers v. Staton, 150 N.C. 216, 63 S.E. 892. See also Lattin on Corporations, p. 314; Oleck, Modern Corporation Law, §§ 1473, 1474.
It is necessary in order to make my position clear with regard to the decision upon the primary question in this case both by the majority of this Court and by the circuit court to quote at this point the following from the majority opinion: "* * * The circuit court in considering the provisions of both parts of the amendment found that they were in irreconcilable conflict and that by reason of such conflict the amendment did not operate to change the meaning and effect of, or supersede, the original constitutional provision which invalidated the restriction or the denial of the right of any stockholder of such corporation to vote for the election of all its directors and managers. According to the circuit court the provisions of the amendment approved and affirmed the decisions of this Court in State ex rel. Dewey Portland Cement Company v. O'Brien, 142 W.Va. 451, 96 S.E.2d 171, and State ex rel. Syphers v. McCune, 143 W.Va. 315, 101 S. E.2d 834, `in more ways than it overruled them.' The meaning and effect of the amendment, as determined by the circuit court, would operate to nullify and defeat the very purpose sought to be accomplished by its ratification by the people. With this conclusion this Court does not agree. It is clear that it was the intention of the framers of the amendment and of the people who ratified it that it should change, amend and supersede, at least to the extent of its new and added provisions, the original constitutional provision, and that the new and added provisions should be given their intended meaning and effect. This it is the solemn duty of this Court to do. Berry v. Fox, 114 W.Va. 513, 172 S.E. 896. In that case this Court held in point 3 of the syllabus that a constitutional amendment, as the last word from the people on a subject under consideration, should be given controlling effect where there is irreconcilable conflict between it and other constitutional provisions.

* * * * * *
"Though there is no irreconcilable conflict in or between the different provisions of the amendment, its provisions are not entirely clear and unambiguous and for that reason they are subject to interpretation by the court according to the well recognized rules of construction applicable to all types of written instruments."
If I have correctly understood the decision of the trial judge as stated in his opinion, which was made a part of the record in this case, he found that Article XI, Section 4, was ambiguous after the amendment, but that the two parts could "be construed harmoniously" *453 by finding that the first part authorized corporations to issue three types of stock with reference to its power to vote for directors: A. No power at any time to do so; B. Full power at all times to do so; and C. "limited power to vote", citing the example of a class of preferred stock which could vote for directors only upon the happening of a contingency such as its preferred dividends being in default. It was my understanding from his opinion that it was his view that only a construction such as the majority of this Court has placed upon the two parts of the section would produce irreconcilable conflict. This Court found that while there was "no irreconcilable conflict" between the different provisions of the amended section that such provisions are "not entirely clear and unambiguous" and resorted to the rules of interpretation to ascertain its meaning. The result is reflected in detail in Syllabus Point 4 of the opinion. The extremely divergent conclusions arrived at by the trial court and the majority of this Court in resolving the "ambiguity" which they found in the amended section gives credence to the language of the opinion in Chesapeake & O. Railway Company v. Miller, Auditor, 19 W.Va. 408, quoting from People v. Purdy, 2 Hill, N.Y., 31, 35, "In this way a solemn instrument * * * is made to mean one thing by one man and something else by another and that too, where the language is so plain and explicit, that it is impossible to mean more than one thing, unless we first lose sight of the instrument itself, and allow ourselves to roam at large in the boundless fields of speculation * * *." Strangely enough, both the trial court and the majority relied primarily upon the rule of construction laid down in State v. Harden, 62 W.Va. 313, 58 S.E. 715, 60 S.E. 394, to the effect that consideration should be given to "every article, section, clause, phrase, and word allowed some effect, and all parts, clauses, phrases, and words harmonized, if possible * * *.", and subsequent decisions of this Court to the same effect. While I agree with the conclusion of the trial court, as heretofore stated, I think Article XI, Section 4, in its application to the instant question, is clear and unambiguous and to ascertain its meaning it is not necessary to resort to any rule of construction or interpretation. Every share of stock issued by the Parkersburg-Aetna Corporation has the power to vote for one or more directors of the corporation and since the question is not raised by this record I hesitate to speculate upon the applicability of the amended section to the voting rights of a share of preferred stock which could be voted for directors only upon a contingency. However, the amendatory language could reasonably be construed to mean that the holders of a class of stock, i. e., preferred stock, could not vote in a stockholders' meeting for the election of directors except upon the happening of a contingency. But, if the contingency occurs, then the stockholder would be "holding stock having the right to vote for directors," and, at that election, he certainly could not be precluded from voting his stock in the manner guaranteed by the Constitution.
It is a paradox to talk about a rule of construction to the effect that "effect should be given to every part and to every word of a constitutional provision and that, unless there is some clear reason to the contrary, no part of the fundamental law should be regarded as superfluous," and then construe the added language of the first portion of Article XI, Section 4, so as to render superfluous the clear language of the latter portion of that section which has remained unchanged for 89 years. When the majority found that the amended section was ambiguous and set out to construe its provisions and interpret its language to ascertain its meaning they should not have confined themselves to one of the rules of construction and interpretation. No one disagrees with the 3rd point of the Syllabus: "The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it." There were guides available to the Court that would have pointed the way unerringly to *454 the intent of the people in adopting the amendment: The history of the section, as stated in the majority and dissenting opinions in the O'Brien case; the evil to be corrected, which incontrovertibly was the decision of this Court in the O'Brien case; the legislative interpretation of the amended section, assuming that an ambiguity existed; and, the great weight that is to be given to the legislative construction of a constitutional provision when it is contemporaneous with, or follows soon after, the adoption of a provision in question. State Road Commission of West Virginia v. County Court, 112 W.Va. 98, 163 S.E. 815; Leonhart v. Board of Education, 114 W.Va. 9, 170 S.E. 418; and City of Roanoke v. James W. Michael's Bakery Corporation, 180 Va. 132, 21 S.E.2d 788. "The provisions of Sections 22 and 66, [of] Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, based on the 1958 Amendment * * *.", as stated in the majority opinion, were reenacted exactly 105 days after the people of this State approved the amendment to Article XI, Section 4. At the risk of being tedious, I shall here quote the pertinent provisions of those two legislative enactments:
Section 22"Every corporation, other than a banking institution, shall have power to issue one or more classes of stock or one or more series of stock within any class thereof, any or all of which classes may be of stock with par value or stock without par value, with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the charter, or in any amendment thereto, or in the resolution or resolutions providing for the issue of such stock adopted by the board of directors pursuant to authority expressly vested in it by the provisions of the charter or of any amendment thereto * * *."
Section 66"In all elections of directors of corporations each stockholder shall have the right to cast one vote for each share of stock owned by him and entitled to a vote, and he may cast the same in person or by proxy, for as many persons as there are directors to be elected, or he may cumulate such votes and give one candidate as many votes as the number of directors to be elected multiplied by the number of his shares of stock shall equal; or he may distribute them on the same principle among as many candidates and in such manner as he shall desire, and the directors shall not be elected in any other manner; and on any other question to be determined by a vote of shares at any meeting of stockholders each stockholder shall be entitled to one vote for each share of stock owned by him and entitled to a vote, and he may exercise this right in person or by proxy."
The wisdom of the rule relating to the contemporaneous legislative interpretation of a constitutional amendment is apparent. Neither the membership, the leadership, nor the committee chairmanships, vary much from one session of the Legislature to the next. Those who served in the 1959 Session of the Legislature of this State knew the extent of the change that had been proposed and approved in Article XI, Section 4, by the amendment of 1958. The members of the Legislature knew exactly what they meant to express when in Section 66, they said: "In all elections of directors of corporations each stockholder shall have the right to cast one vote for each share of stock owned by him and entitled to a vote, * * * for as many persons as there are directors to be elected, * * *." (Italics supplied.) The right of cumulative voting was preserved, and to emphasize that the members of the Legislature knew what they were doing, that right was preserved only in the election of directors and it was again provided that upon any other question such right would not be enjoyed by the stockholders.
*455 I am in complete agreement with the statement in the majority opinion that under the 1958 amendment to the Constitution of this State, "Sections 22 and 66, Article 1, Chapter 20, Acts of the Legislature, 1959, Regular Session, which are based on that amendment and are in harmony with it and for that reason are constitutional and valid, * * *." However, the provision of Section 7 of the charter of the Parkersburg-Aetna Corporation which denies the right of its shareholders who have the right to vote for directors to cast their votes in the manner provided both by the Constitution and by the plain language of the statute contemporaneously interpreting it is in plain contravention of both and invalid. It is agreed that corporations may issue stock with full voting powers, or no voting powers, including the right to vote for directors at all meetings when they are to be elected, and the denial of the same right. Perhaps the use of the word "limited" is the key the answerto the erroneous conclusion of the majority in this case. This language of Code, 31-1-22, was not condemned in the O'Brien case: "Every corporation * * * shall have power to issue one or more classes of stock or one or more series of stock within any class thereof, any or all of which classes may be of stock with par value or stock without par value, with such voting powers, full or limited, or without voting powers and in such series and with such designations, preferences and relative, participating, optional or other special rights, and qualifications, limitations or restrictions thereof, as shall be stated and expressed in the charter * * *.", except insofar as it permitted a corporation to issue stock without the right to vote for directors. There are many limitations of voting rights that may be placed upon a share of stock that were legal before Article XI, Section 4, was amended and are legal now except as otherwise provided by the Constitution or statute law of this State. For example, if provision is made in the original charter, or in other ways not here pertinent, stock may be denied the right to vote on amendments to the charter: adding to or diminishing the corporate powers; substituting in whole or in part the powers originally granted; increasing or decreasing the amount of authorized capital stock or classifying or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participating optional, or other special rights of the shares, or the qualifications, limitations or restrictions on such rights; changing shares without par value into shares with par value or conversely with or without increasing the number of shares; or any other change or alteration in the charter that may be desired. See Code, 31-1-11, 12, as amended. If "limited" is the magic word by which the majority of this Court arrived at its decision, never before was there such a construction of plain English in a constitution or a statute. It was necessary to pluck the word "limited" from the first portion of the constitutional provision and pull it down into the second or latter portion thereof and hold that it modifies the manner of voting contained in the latter portion, and to do worse than that with the two sections of the statute construing Article XI, Section 4, as amended. The word "limited" had to be brought from the middle of Section 22 down through the intervening sections to Section 66 and made to modify the applicable cumulative voting provisions contained therein. Even if such a strained construction could be justified, surely the anomaly thereby created was never intended by the majority. The decision of the majority is tantamount to construing the mandate of the latter portion of the section as providing for "limited cumulative voting," a legalistic and linguistic monstrosity composed of anomalous and conflicting language that no rules of construction or interpretation ever devised could unravel.
It has not been easy for me to follow the reasoning of counsels' briefs and arguments in the O'Brien case and in this case as to why it is necessary for this Court to come to the aid of the holders of a majority of the stock of a corporation to protect it from *456 the persecution of a minority. In the majority opinion the plaintiffs are described as a minority group who "claim to own 104,743 shares of common stock of a total of 749,444 shares of common stock of Parkersburg-Aetna Corporation issued and outstanding * * *." A minority group of stockholders who claim to own "104,743 shares of common stock of a total of 749,444 shares of common stock" outstanding should present no problem to the majority in view of the amendatory language of Article XI, Section 4, which now contains the words, "with full, limited or no voting powers." The majority has the power to amend the charter and apparently do what the Portland Cement Company attempted to do in the O'Brien case, that is, change the outstanding stock into two or more classes with only one class having the right to vote for directors. In the favored class, there could be, shall we say, only three shares of stock issued, and those could be purchased by the "majority group" and forever thereafter all threats against their supremacy would be gone.
In the O'Brien case, this Court rejected as irrelevant the argument that this Court, in determining the meaning of Article XI, Section 4, should consider the economic and financial plight of the state and to take cognizance of the fact that, after all, a dissident stockholder was not forced to purchase the stock which he owns, the inference being that if there was some conflict between a provision of the charter or of the bylaws of the corporation which conflicted with the Constitution of this State, that he should sell his stock or should not have purchased it in the first place. It was urged then, and now, that if this Court did not construe out of the section the language that is offensive to corporations that those who are not now doing business here would refuse to come into the state and perhaps most of those already here would leave. There was a clear inference that the boundless prosperity which permeates this state as a result of the previous administrative interpretation of this section would be lost. Since Article XI, Section 4, was amended, it is not entirely without the realm of possibility that a corporation may obtain a charter from the Secretary of State which provides for the issuance of two classes of common stock, Class "A", composed of three shares with full voting rights, of which the prospective insiders may each buy one share of Class "A" stock and perpetually elect themselves directors, and 9,999,997 shares of Class "Z" stock with no voting rights of any kind. With those opportunities available to prospective industrial enterprises who seek to incorporate under the laws of this state, it is not easy to understand why it is also necessary for this Court to "construe" out of the latter clause of this section the guarantee of the right of cumulative voting.
It is my fervent hope that I have misinterpreted the holding of the majority as stated in that part of the opinion which I shall soon quote as badly as they believe that I have misinterpreted Article XI, Section 4, after the amendment of 1958. If not, it is their view that if there is a conflict between the provisions of the charter of a corporation and a provision of the Constitution of this State, or an Act of the Legislature, the former shall prevail. This is what they said:
"So to interpret the amendment does not deprive any stockholder of any of his voting rights * * * as the kind or class of stock purchased by and issued to him gives him under the charter provisions of the corporation, and he accepts the stock with knowledge of and subject to such terms and limitations. No person is required to purchase stock in any corporation and when he does so voluntarily he accepts the stock subject to the limitation imposed relating to the powers conferred with respect to the election of directors or managers of the corporation."
A corporation, and all of its assets, is owned solely by its stockholders. Into every charter issued by this State to a corporation the provisions of Article XI, Section *457 4, have been written for the protection of the large shareholders and the small. Somewhere, somehow, I got the impression that when there was a conflict between a provision of the charter of a corporation or of one of its bylaws and the organic law of this state or a valid statute that the latter prevails. It was my impression also that those persons protected by a provision of the Constitution could stand on their rights and come for vindication to the only place to which they can comethe courts. Let us hope that if the opportunity is presented at some future time that my brethren then will find that an "ambiguity" exists between that part of their decision last quoted and some other part of the opinion. They might even find an "irreconcilable conflict". I will join them in finding that either, or both, exists. I would affirm the judgment of the Circuit Court of Wood County wherein it held that the charter of the Parkersburg-Aetna Corporation was invalid insofar as it provided that preferred stockholders had the exclusive right to elect one director and no right to vote for the other directors of the corporation and granted the exclusive right of the common stockholders to elect all directors except the one to be elected by the preferred stockholders and denied them the right to vote for that director.